## HAWKINS *v.* CLAY COUNTY COTTON OIL CO. ET AL.

### [86 South. 291.  No. 21125.]

CORPORATIONS. *Stockholder's bill against officers and directors, alleging negligence and fraud, held to state a cause of action.*

A bill in chancery by stockholders of a corporation against the officers and directors of such corporation, alleging that the officers and directors squandered the funds and assets of such corporation by speculating in futures and by making *ultra vires* contracts, and that the corporation lost large sums in a given period through gross negligence and inattention of the directors to the business of the corporation, and that the books do not show the disposition of certain assets which the corporation was shown to have had by the books shortly preceding a bankruptcy proceeding, and that the schedule in bankruptcy showed less assets than the books showed shortly before such proceeding in bankruptcy, and alleging a composition with creditors at twenty per cent. in such proceeding, and that money was borrowed by fraudulent collusion between the officers and the lender, for the fraudulent purpose of acquiring the assets, and that, if recovery is allowed, more than enough will be allowed to pay such mortgage, and that the directors and officers have refused an inspection and audit of the books of the corporation, states a cause of action.

APPEAL from chancery court of Clay county.
HON. A. J. MCINTYRE, Chancellor.

Suit by F. G. Hawkins against the Clay County Cotton Oil Company and others. Demurrer to amended bill sustained, and bill dismissed, and plaintiff appeals. Reversed and remanded.

*Paine & Paine,* for appellant.

*Roberts & Beckett* and *Gates T. Ivy,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill against the appellees, setting forth that he was the owner of ten shares of the stock of

the Clay. County Cotton Oil Company, and that the defendant Evans is president of said corporation, and defendant Scott secretary, and that Evans, Scott, Yates, and Wolfenden were directors of said corporation, and that the said defendants owned all of said capital stock, except one hundred and eight shares; the owners of the one hundred and eight shares being set forth in the bill and afterwards joining with the complainant as complainants in the suit. The capital stock of the corporation was sixty thousand dollars. It was alleged in the bill that in the year 1914 the plant at West Point was burned, and that forty thousand dollars was collected as the insurance, and that the corporation had plants at Vicksburg, Miss., and Houston, Miss., and that the said corporation did not cease to be a going concern on account of the destruction of the West Point mill, but that in the year 1916 the corporation ceased to be a going concern, owing to the gross carelessness and negligence and the misfeasance and malfeasance of the board of directors and officers, the defendants herein, and that a petition in involuntary bankruptcy was filed, and said corporation adjudged an involuntary bankrupt; but afterwards the said corporation mortgaged all of its visible assets, except its charter, notes, and open accounts and choses in action, and was thus enabled to make a proposition for composition to its creditors of twenty per cent., which offer was accepted and was approved by the bankrupt court and the case dismissed, in the fall of 1916; that the mortgage Exhibit D of the bill, was given to E. F. Nunn & Co., of which concern the wife of defendant Evans was a party in interest; that under and by virtue of the provisions of the deed of trust the same was foreclosed, and the assets of said corporation purchased by Mrs. Evans, defendant Evans' wife, at and for the sum of six thousand five hundred dollars; that Mrs. Evans owned a controlling interest in the corporation of E. F. Nunn & Co., and that the efforts of defendant Evans were directed towards the acquisition of the assets of the Oil

Company, with the fraudulent purpose of depriving the complainants of the true value of their stock.

It is alleged that at the time of the filing of the petition in bankruptcy there was real and personal property of the value of one hundred thousand dollars, and debts amounting at that time to two hundred and twenty-five thousand dollars, not including the capital; that the defendants as officers and directors maintained a trust relation to the complainants, and were charged with the duty of giving their personal attention to the management of the affairs of said corporation and to guard it against the making of improvident and unwise contracts, and to guard it against the misappropriation of its assets, and to protect the complainants against the loss of their capital invested in the stock of said corporation, and to guard against the misappropriation of the assets of the corporation by its officers; that said directors and officers, in utter disregard of their duties, failed to exercise proper supervision over the affairs of said corporation, and were guilty of gross negligence in the discharge of their duties, in permitting the said corporation, through its officers, to squander the assets of said corporation, and to incur huge liabilities in excess of the capital stock.

It is further alleged that the president of the corporation, one of the defendants, misapplied and misused the money and property of the corporation, and that said misapplication and misuse of the money was done with the knowledge and consent of the other defendants, whereby large sums of money belonging to said corporation were lost, and large debts *ultra vires* incurred; that said president, with the consent of the directors, on December 31, 1915, while the corporation was insolvent, made improvident contracts with the Southern Cotton Oil Company, New Orleans, La., whereby the said corporation suffered a loss of twenty-five thousand, eight hundred dollars and on the 15th of December, 1915, with one A. K. Burrow, Memphis, Tenn., whereby the corporation lost the sum of twenty-four thousand one hundred eighty-seven

dollars and fifty cents, and that these transactions were speculations on the future market and contributed to the loss of the complainants; that, in utter violation of the law and duty owed the complainants, the defendants, in the name of the said corporation, borrowed large sums of money from different parties, while the corporation was insolvent and in excess of the capital stock of the corporation (naming the persons and sums of money so borrowed), and alleged that other large sums, to the complainants unknown, were borrowed, which can only be ascertained from an inspection of the books of the corporation; that the president of the said Cotton Oil Company, with the knowledge and approval of the other defendants, took large sums of solvent assets of the said corporation and discounted them with the Bank of West Point, of which bank Evans was also president, approximating thirty thousand dollars, and squandered the same, with the knowledge and consent of the other defendants, alleging that the exact manner in which this money was squandered is unknown to the complainants; that on account of all these large debts, made in violation of the law and in disregard of the duty of the trust relation due the complainants, the corporation was badly crippled, its credit impaired, and its capital stock depreciated in value.

It is further alleged that the complainants had repeatedly requested the defendant to permit him to have inspected and audited the various books to enable him to determine the condition of the corporation and the value of his stock, but that, ignoring and violating his rights as a stockholder to so inspect and audit the books, the said officers refused to permit him to inspect the books or have the same audited; that by reason thereof he is unable to state in the bill in detail the condition of the stock and what had become of the assets of the corporation, and that he had been unable to obtain any relief through the corporation or its officers.

Complainants further alleged that all of the books, papers, records, documents, and deposit and cash books, ledgers, notes, and accounts, and all other assets of the said corporation are in the possession or under the control of the said president and secretary of the corporation, and that the complainants are denied the right to examine the books and records, and that the powers of this court are needed to enable the complainant to compel the defendants to permit an examination of its books and records, and that an accounting is necessary, through the court or under its direction, to ascertain the true extent of the liability of the defendants by reason of their malfeasance, misfeasance, and gross negligence, and that under the facts complainants are unable to state the value of the stock before the acts of negligence, misfeasance, and malfeasance were committed, and that a court of law would be wholly inadequate for the purpose of determining the question involved, and that a full accounting must be had; and the bill prayed that the officers be required to produce for the inspection of the complainant, for his audit, the said books, papers, and records of said corporation in the possession or under the control of the said officers of the said corporation, and that on final hearing a full accounting be had and taken under the direction of the court, to show the real and true value of the stock of the complainant, and also what they should have realized from the same, save for the gross negligence and gross mismanagement and the carelessness and misfeasance and malfeasance of the officers and directors of the corporation, and when said accounting shall be ascertained a personal decree of this court be entered against each and every director for the full amount of the loss suffered by complainant through the carelessness or mismanagement or misfeasance or malfeasance or gross negligence of said defendants, and for other relief.

The charter of the corporation was made an exhibit to the bill, and the purposes for which it was granted are stated:

"Are manufacturing and refining cotton seed oil and vegetable oils, and each and every product, and all articles of use, as food, or other wise, of which any of the same form a component part and may be utilized into any condition, combination, connection, article, substance, or for whatsoever; manufacturing soap and other saponaceous substances, and also fertilizers of every character, buy and sell cotton and coal, operate ginneries, mills, and compress cotton, and manufacture the same into any article of trade. Operate a plant for the manufacture of ice, and buy, deal in, and traffic in any of the articles, products, or substances above mentioned, or any article of merchandise, and buy necessary and proper for its purposes, one million dollars, sell, or lease any and all other, real and personal property, rights, and privileges in connection with the purposes above named, and borrow money and issue bonds, or other obligations of the company, from time to time for the purpose of the company, and secure the same by mortgage, or by other instruments, on any or all of the property, rights, franchises, and incomes of the company, wherever situated, acquired and to be acquired, and selling and disposing of the same in such manner and upon such terms as the board of directors of the company may deem judicious, and do any and all acts in furtherance of the purpose for which said corporation is established, not conflicting with the laws of the state of Mississippi."

After the filing of the original bill a motion was made before the chancellor for an order permitting the complainants to have an inspection and to audit the books, accounts, etc., of the said corporation. After an inspection of the books, an amendment was filed to the bill, in which it was alleged that the defendants Evans and Scott, with the knowledge and consent of the directors of the corporation, were permitted to and did unlawfully speculate in the future market in the name of said corporation, using the funds of said corporation, whereby large sums of money and assets of said corporation were lost to the

corporation, which greatly depreciated in value the complainant's stock, and which speculations, among others, upon the future market, were conducted through W. P. Battle & Co., Memphis, Tenn., and which entailed a loss on said corporation of sixteen thousand six hundred eighteen dollars and fifty-six cents; that this speculation, as well as other speculations charged in the original bill, were speculations upon the future market, and illegal and *ultra vires* of the Clay County Cotton Oil Company; that on the 10th of August, 1916, and immediately prior to the placing of said corporation in voluntary bankruptcy, the said books of the said corporation showed that the said corporation should have had on hand bills receivable in the total sum of thirty-five thousand, eight hundred forty-three dollars and fifty-three cents, which had not been rediscounted; and charges upon information and belief that a large part of these assets were lost to the corporation by the gross negligence or carelessness of the officers and directors of the said corporation.

It is further charged that the said books of the said corporation do not disclose what was done with the said bills receivable, nor what became of the bills receivable on hand in the custody of said officials when the audit was made by the complainants. It is further charged that a schedule of this corporation in bankruptcy, filed on August 23, 1916, alleged that the corporation had at that time in bills receivable only the sum of eighteen thousand, one hundred eighty-one dollars and seventy-one cents, and that the directors and officers should be held to account to the complainants for the balance of the said bills receivable belonging to the corporation as shown by its books of August 10, 1916.

It is further alleged that the books of the corporation show a loss on the operating account between July 1, 1916, and August 10, 1916, of thirty-three thousand eight hundred eight dollars and fifteen cents, and that this large loss was incurred by the corporation, solely due to the gross negligence and carelessness of the said directors and

officers of the corporation in not giving to the corporation the proper care and attention. It is further alleged that the corporation also has assets in the sum of six thousand, eight hundred eighty-eight dollars and three cents due on open accounts, a large portion of which are worth full face value, and that the balance of the accounts could have been collected in full if the said officers and directors had not been guilty of gross negligence and carelessness in failing and refusing to collect and realize on said assets.

It is further alleged in the amendment to the bill that, in furtherance of the fraudulent schemes of the said Evans to deprive the complainants of the true value of their stock, shortly before the said property was sold and purchased in the name of Mrs. Evans, the wife of the defendant Evans, the notes executed by the said corporation and pretendedly secured by the said deed of trust were transferred and assigned by Mrs. Evans to certain banks, as appears from the face of said deed of trust; but it is charged on information and belief that such notes were not held by the banks, but had been paid off by the said Mrs. Evans, or some one in her behalf, and are now held by her, and are not in the hands of innocent purchasers for value without notice.

It is further charged that, after the composition in petition in bankruptcy was allowed, accepted, and approved, the Clay County Cotton Oil Company owed no debts, except as represented by the notes held by Mrs. Evans, and that these notes cannot be held and considered as a debt against the corporation, as affecting the rights of your complainants, due to the fraudulent scheme of the said defendant Evans, as alleged in the bill; but, if mistaken in this that if the complainants recover against the said defendants the amount sought to be recovered would more than pay the notes held by Mrs. Evans and would be sufficient to liquidate any amount due her, the said Mrs. Evans, and would leave a considerable amount of money and assets which belong to the said complainants, the stockholders of the said corporation.

The bill as amended was demurred to on the following grounds: (1) There is no equity in the bill. (2) The allegations of the bill warrant no relief. (3) It is not alleged in the original bill that application was made to the 'board of directors for relief, or for the institution of a suit, and that nothing is shown from the allegations of the bill that such could not have been done and relief in this way obtained. (4) As there is not alleged in the bill any excuse for failure to apply to the board of directors. (5) If there was any reason for the failure to apply to the board of directors, it was not shown that application was then made to the stockholders of the institution, nor is there alleged any reason for failure to apply to the stockholders to institute a suit for redress. (6) It does not appear from the face of the bill that such a suit would not have been instituted, either at the instance of the directors or of the stockholders. (7) It is not alleged in the original bill that all debts of the corporation have been discharged, nor is it alleged that, if the defendants are held liable for any *ultra vires* acts, negligence, wrong, or misfeasance, that there would be more than enough resulting to pay the creditors. (8) It appears on the face of the bill that the complainant is guilty of such laches as bar his recovery. The chancellor sustained the demurrer and dismissed the bill, from which decree the appellants appeal.

The bill charges enough to impose liability, if the allegations of the bill and amendments thereto are taken as true. The amendment to the bill specifically charges that, if the recovery is allowed, there will be more than enough to pay any notes that may be held by the holder of the mortgage. The bill charges that certain sums of money were lost in dealing futures. It also charges that the books do not show what became of large amounts of bills receivable, and that these bills receivable by the exercise of reasonable diligence could have been recovered on. We think the bill is good against a demurrer. It might have been amended, so as to state with more directness and particularity, after the audit, the facts; but, if the allega-

tions are insufficient for a proper understanding by the defendants, the court has ample power to require specifications. The bill as originally filed necessarily had to deal in general allegations, the complainants not having access to the books; but as against a demurrer the allegations of the bill are sufficient to warrant the chancellor in awarding relief, taking an accounting, if necessary. In other words, if no defense had been made to the bill, a chancellor could have sustained the bill and awarded an accounting, through a master or otherwise. As the creditors were satisfied by a composition, their rights disappear, and if there were more than enough assets in the hands of the corporation to pay the debts secured by the deed of trust, or if there had been a fraudulent conversion, misappropriation, or concealment of assets, or if assets were gambled away on the future market, as alleged in the bill, and the amounts so misused, misappropriated, or misapplied exceed the notes outstanding secured by the deed of trust, of course, the complainants had a right to have it so applied. If there was a fraudulent contraction of a debt, or fraudulent collusion between Evans and his wife to acquire the assets of the corporation, as alleged in the bill, a court should give relief. It may be that the allegations of the bill are not true; but this is to be determined by answer and proof, and not by demurrer.

*Reversed and remanded.*