EASTLAND *v.* STATE.

No. 39383          February 21, 1955          78 So. 2d 127

*M. V. B. Miller, Gerald Adams, Chas. B. Cameron,* Meridian, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

McGehee, C. J.

On August 6, 1953, the appellant J. O. Eastland was indicted in Lauderdale County for the crime of embezzlement, wherein it was alleged that as City Tax Collector of the City of Meridian he embezzled funds coming into his hands by virtue of such office, covering the period from May 1, 1945, until and including February

18, 1952.  The indictment charged that the exact amount of shortage in the funds was to the grand jurors unknown, but that the same amounted to more than $25.00. On the trial which was held in February 1954, the State undertook to show by its proof that the amount alleged to have been embezzled throughout the aforesaid period of nearly seven years, was in excess of $30,000.00.

On August 7, 1953, the State announced that it was ready to arraign the defendant for plea to the indictment.  Thereupon one of defendant's counsel stated ''the defendant is not able to be in court, so his physician advises me.  His physician is in court.''  No written motion for a continuance was filed at that time, but the court heard considerable testimony as to whether or not the defendant was able to be in court, and then set the case for hearing on Tuesday morning, August 11, 1953, both for arraignment and trial.  On this subsequent date further testimony was taken as to the physical condition of the defendant, and as to whether or not he could intelligently advise with his counsel in regard to the merits of the case, or undergo the ordeal of testifying as to the various items of tax collections.  Finally, the District Attorney requested the court to grant the defendant a continuance for the term, and this was accordingly done.

At the February 1954 term of the court the defendant filed a sworn application for a further continuance, alleged that the charge of embezzlement, covering the period from May 1, 1945, through February 18, 1952, involved the various and sundry public records and sums of money in the nature of tax collections, the records including books, papers, ad valorem tax rolls, privilege taxes, receipts and records showing bank deposits, etc.; and that because of the serious illness of the defendant for the preceding nine to twelve months, during which he had either been confined in his home or a local hospital, he had not had an opportunity to examine the cor-

rectness or the accuracy of all the entries made on the official books of the City of Meridian, so as to properly prepare his defense in the case. The application for continuance further alleged that the defendant had been suffering from organic and serious heart affliction and had undergone repeated heart attacks; and that at the time of the filing of the said application for continuance on February 15, 1954, the defendant was unable to intelligently confer with his counsel in regard to the book entries and items relied upon by the prosecution, and was physically unable to then undergo the strain incident to testifying as a witness in regard to the transactions which had covered the period of nearly seven years, and that according to the advice of his physicians he could not then undergo the ordeal of the trial and of testifying in his own behalf without great risk and danger to his life. It was further alleged that he had been of practically no assistance to his counsel in their efforts to prepare the case for trial and that his attending physician had stopped a conference which his counsel were undertaking to have with him in regard to his defense to this charge of embezzlement of the city funds over such a long period of time, on the ground that he was physically unable to participate in such a conference without hazard to becoming more seriously ill from the many ailments that he was then suffering. At the conclusion of the testimony of four local physicians in support of the allegations of this application for continuance, the court overruled the motion.

Then on February 17, 1954, the defendant renewed his motion for a continuance or for a delay to a later date of that term of court, and stated in his sworn application in that behalf that he desired to offer all of the evidence theretofore heard on the former motion for continuance, and stated in addition thereto that on that morning he suffered a heart attack at his home, and that the trial which was then in progress, if proceeded with,

would jeopardize the life of the defendant, and this supplemental application stated that the defendant further informs the court that the heart attack on that morning had necessitated the calling to his home of his family physician, who examined him, and that said physician had informed the court that the defendant was not able to be present in court that morning, and that he had advised and ordered him to remain in bed.

The trial was suspended during that forenoon, and the supplemental application alleges that during the noon hour of that day the defendant had again been examined at his home, and he alleged that he was unable to undergo the further ordeal of the trial, and that as a result of this last heart attack, ''he has suffered many hours with extreme pain in his chest and in his arms, and that his physicians had continued to advise him that he was not physically fit to stand trial and to testify in his own behalf.''

When the court thereupon requested defendant's attorneys to produce the defendant in court in order that the trial might proceed, one of his attorneys, Honorable Charles B. Cameron, advised the court that the attorneys did not think that they should assume the responsibility of so doing. The sheriff was thereupon ordered to go to the home of the defendant and bring him to the court in an ambulance, if necessary, accompanied by his family physician. When the sheriff advised members of the defendant's family of the court's order they brought him, accompanied by his physician, into court.

One of the defendant's counsel, Honorable Martin Miller, testified on the motions for a continuance that he had ''not been able to get much in the way of information out of Mr. Eastland, nothing like what it would take to properly present his defense of his case. * * *; I have tried to confer with him and I just haven't been able to.'' The attorneys for the defendant had been

employed at the August 1953 term of the court to represent the defendant at the trial.

The State did not undertake to contradict the testimony of the four local physicians who had testified as to the physical and mental condition of the defendant. In other words, it is wholly undisputed in the record that the defendant was both physically and mentally unable to intelligently confer with his counsel or to undergo the ordeal of an examination and cross examination in regard to the intricate book entries and the various items on which the State was to rely as constituting the alleged shortage during the period of nearly seven years.

According to the allegations contained in the motion for a new trial, it was stated that the trial had lasted for four days, and until after midnight on the last day thereof, during all of which time it was of course necessary for the defendant to be present since he was being tried for a felony.

In overruling the motions for a continuance the trial court recognized in his ruling that the defendant was a sick man, but the action of the court in overruling the motions was based upon the fact that the testimony of the four physicians did not affirmatively indicate that the accused would be any more able to stand trial at the next term of court than he was at the time he was being required to stand trial.

The testimony of the four physicians, W. R. Mitchum, T. G. Cleveland, J. P. Tatum and B. J. Price, men of high standing in the medical profession in this State, disclosed that the defendant had suffered from general arteriosclerosis, which had "affected his heart and his brain"; that he had suffered repeated heart attacks; that he had gall stones; that he had suffered from cerebral thrombosis; angina pectoris; that he had a marked enlargement of his heart; that he had experienced congestive heart failure, a phase of heart disease; that the arterio-

sclerotic condition is as extensive in his brain as it is in the other parts of his body, and that his brain would not be supplied with the normal amount of fresh circulating blood that would be required under pressure during the ordeal or a trial; that he had suffered paralytic strokes, and had two hernias for which his physician had refrained from operating because of his heart condition, although the physician was of the opinion that an operation would otherwise have been advisable; and they all agreed that they would deem it hazardous and a danger to his life for him to be subjected to the physical and mental exhaustion that would be involved in undertaking to confer with his counsel during such a prolonged trial and by undertaking to testify as a witness in his own behalf in regard to the book entries, tax collections, deposits, etc. In other words, it was their professional opinion from their own knowledge of the patient and from an examination by each of the physicians that he could not undergo the conferences with his attorneys that would be necessary during such a trial, or afford to take the stand as a witness for direct examination, and with a likelihood of a prolonged cross examination without serious danger to his heart condition and a hazard to his life, even if he was mentally capable of so doing.

The medical testimony taken on the 7th and 11th days of August, 1953, and on the 15th day of February, 1954, is all made a part of this record, and at the conclusion thereof the court stated that "I am aware that he is a sick man all right, but his doctors don't say he would be in any better position to stand trial at any later date, and I am going to have to ask you gentlemen to produce him in court."

■■ We don't think that the question of whether or not one accused of crime will be any better able to undergo trial at a later term than at a current term is the test as to whether or not one accused of either a misdemeanor or a felony is entitled to a continuance of his case. Sup-

pose that one accused of crime should raise the issue that he is not then mentally capable of conducting a rational defense, then surely the test would not be as to whether he would probably be in any better mental condition at a subsequent term, but whether or not he can be lawfully tried at any time when he is incapable of conducting a rational defense.

There is no proof contained in the record that the defendant was a malingerer and no contention to that effect is made. We cannot assume as a fact that the defendant would not have testified during the trial if he had been physically and mentally able to do so. Nor is that contention made here. In any event, he could have conferred with his attorneys so as to enable them to better cross examine the State's witnesses and develop any defense that he may have had to their testimony, if he had been physically and mentally able to do so.

In the case of Sullivan v. State, 150 Miss. 204, 116 So. 612, where the accused had been convicted of the unlawful possession of intoxicating liquor, this Court held that in determining whether a trial court erred in denying continuance on the ground that the accused was sick and unable to attend court on the day of the trial, the Supreme Court will consider nothing save that which appears in the record. The Court further held that where the record did not disclose any competent testimony in conflict with the testimony of the physicians that in their judgment the accused man was unable to attend court on the day of his trial, it was reversible error to deny the continuance.

In Corbin v. State, 99 Miss. 486, 55 So. 43, where the accused was charged with the unlawful sale of intoxicating liquors, the Court held that "the appellant had the constitutional right to be present when tried; such right being guaranteed by the 26th section of the constitution, which applies to trials for misdemeanors as well as felonies." Quoting from the case of Garman v. State,

66 Miss. 196, 5 So. 385, the Court said: "It was his right to be present, and to see and hear what occurred in the trial, and to advise and assist his counsel; * * *."

It is true that in the instant case the accused was present at the trial, but under compulsion and under protest. However, he may as well have been absent from this trial, if when present he was unable to intelligently confer with his counsel as to the merits of the case, and unable to undergo the ordeal of testifying in his own behalf.

In 22 C. J. S., p. 749, it is said: "The trial court may in the exercise of a sound discretion refuse a continuance for physical or mental incapacity of accused unless it appears that forcing him to proceed will endanger his life or health or deprive him of the fair trial to which he is entitled."

In the case of Graham v. State, 160 S. W. 715, the Texas Court said: "The statement of facts shows that he was in such condition that he was not, and could not perhaps be, placed upon the witness stand to testify. * * * While this language of the witness may be a little strong, yet it tends strongly to support the application filed by affiant, Templeton, that appellant was not in a condition to be tried, and he could not be of any assistance to his counsel during the trial. * * *, we are of the opinion the Court should not have tried the appellant * * *." In the case of Haggett v. State, 99 Miss. 844, 56 So. 172, this Court said: " * * * from the evidence of these physicians it is manifest that the appellant was too ill to be present at her trial, and consequently the motion for a continuance should have been sustained. Corbin v. State, 55 So. 43."

The State cites no decisions of any court holding to the contrary, but relies upon Section 1520, Code 1942, which provides among other things: "On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his

absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists; and that the continuance is not sought for delay only, but that justice may be done.'' While this statute deals primarily with continuances on the ground of an absent witness, there is cited in the annotation thereof some cases which deal with the absence or illness of a party. One of the cases is the civil case of King v. McWhorter, 174 Miss. 187, 163 So. 679, which holds that the absence of a party is no cause for a continuance when the case is reached for trial, unless his presence is necessary for the proper presentation of his case, and this must be shown, not by way of conclusion, but by evidence justifying such conclusion. We think that in the instant case the evidence fully justified a conclusion that the presence of the defendant was necessary for a proper presentation of his case. The cases of Corbin v. State, and Haggett v. State, supra, are cited in this annotation to support the view that when a defendant is too ill to attend trial, even when charged with a misdemeanor, he is entitled to a continuance of his case.

In civil cases and in misdemeanor cases it may be stipulated that if an absent witness were present he would testify to certain material facts, even though it is not admitted that such testimony would be true, but in criminal cases the accused is required to be present when being tried for a felony, and is entitled to be present when being tried for a misdemeanor, and should not be tried in either case unless he is physically and mentally able to confer with his counsel as to the merits of the case, and to testify as a witness in his own behalf.

A defendant in a criminal case is not required to set forth the facts to which he would testify if physically and mentally capable of testifying as a witness. He is

not required to disclose in the record of the trial what his testimony would be, since he may reserve the right to determine whether or not he will take the stand as a witness after the State has introduced its evidence in support of the indictment against him. We are therefore of the opinion that Section 1520 is not controlling except in the case of an "absent witness or documents," one being accused of crime being entitled to be present and to be tried only when he is physically and mentally capable of intelligently conferring with his counsel as to the merits of the case and of testifying in his own behalf. The defendant did not testify in the instant case and we are of the opinion that his attorneys were justified in not placing him on the stand as a witness, contrary to the advice of four reputable physicians, even if they had known that his testimony would have established his innocence.

■■ We do not reach the merits of the instant case as to the guilt or innocence of the accused, but we merely hold that he had the constitutional right not to be tried under the circumstances disclosed by this record. If we should approve the test followed at the trial as to the right of the prosecution to proceed with a trial, when the accused is physically and mentally unable to stand trial within the meaning of Section 26 of the State Constitution, then any invalid could be brought from his sick bed at home or in a hospital and be tried for crime where the State is able to show that his condition would likely never improve.

We recognize that Section 1520, Code 1942, does invest in the trial court the right to grant or deny a continuance, in its discretion, but we do not think that the exercise of a judicial discretion would permit the denial of the constitutional right invoked in the case at bar. The cause must, therefore, be reversed and remanded.

Reversed and remanded.

*Roberds, Hall, Kyle* and *Holmes, JJ.,* concur.