JAQUITH *v.* BECKWITH

No. 42939 November 12, 1963 157 So. 2d 403

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*E. H. Cunningham, Jr.,* Jackson; *Lott & Sanders,* Greenwood, for the appellee.

ETHRIDGE, J.

This case involves an order of a circuit court before trial transferring a defendant indicted for murder to the Mississippi State Hospital at Whitfield for a psychiatric examination. It was attacked by a habeas corpus proceeding brought by the accused, Byron De La Beckwith, against Dr. W. L. Jaquith, director of the hospital, where the court had delegated to make the mental examination. The circuit judge held the committing order was void, discharged Beckwith from confinement in the hospital, and directed him to be held in the custody of the sheriff of the habeas corpus court until further order. The state appealed from that judgment.

The issues are whether the order committing accused for psychiatric examination (made over objection of his counsel) was invalid because not supported by any evidence reflecting a reasonable probability that accused was incapable of conducting a rational defense, thus denying him due process of law; and whether such a committing order, with those manifest defects, can be attacked by habeas corpus. We answer these questions in the affirmative.

The pertinent statute is Chapter 262, Mississippi Laws 1960 (Miss. Code 1942, Rec., Sec. 2575.5):

"In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; provided, however, any cost or expense in connection with such mental examination

shall be paid by the county in which such criminal action is pending.''

## I.

Beckwith was indicted at the July 1963 term of the Circuit Court of Hinds County for the murder of Medger Evers. Upon arraignment he pleaded not guilty. On July 15 the district attorney filed a ''Suggestion of Insanity and Motion . . . for Mental Examination of Defendant.'' The motion alleged that Evers was killed on June 12, 1963, and the district attorney through investigation had obtained facts which placed ''the mental competency or sanity of the defendant in serious question.'' Hence movant asked the court to order defendant to submit to a mental examination by a competent psychiatrist selected by the court ''to determine his ability to make a defense, as well as to determine the mental state of the defendant on June 12, 1963.'' Beckwith, represented by three able and experienced attorneys, filed a response, which asserted that he was capable of making a rational defense to the charges against him, and there was no question but that his mental condition permitted him to make such defense. Defendant and his attorneys objected to such an examination. They asserted it would violate his constitutional right to a speedy trial (taking 30-90 days), would require him to be a witness against himself, and would deny him due process of law.

On July 18 there was a hearing on this motion and the response. The state's evidence in support of its motion was weak and limited in scope. A psychiatrist said that he saw Beckwith on one occasion as a patient sometime in the spring of 1962. He arrived at a diagnostic conclusion, but was not permitted to give it, since it would violate the physician-patient privilege.

Yerger Morehead, an attorney of Greenwood, is a first cousin of Beckwith. When Beckwith's father died

in California, he brought him and his mother back to Mississippi. Beckwith was between five and six years old at that time. His mother died when he was eleven, and Morehead was appointed his guardian. He lived in the same house with Beckwith from the time the latter was five and a half years of age until 1941. Both were in the Marine Corps in World War II, and for several months after that they again lived in the same household. Morehead was of the opinion that Beckwith's mental condition was changed after from what it was before the war. He stated:

''I think he is able to confer fully with his attorneys and to consult with them and to prepare his defense along with them but . . . after a period of a number of years of observation and under the conditions in which I saw him I don't believe he is mentally capable of being guilty of a crime of violence. . . .'' Nevertheless, the witness said there was no question in his mind but that accused was able to make a rational defense and confer with counsel.

A cotton farmer of Greenwood said that during the second week in June, shortly before the alleged killing, Beckwith called to sell him some fertilizer; that he had a pistol in his pocket, they discussed it, and Beckwith said he carried it with him to Sunday School and church, and had been carrying the weapon for a number of years.

The remaining evidence offered by the state was documentary in nature. In 1960 Mrs. Beckwith filed a divorce action against her husband, alleging numerous acts of habitual cruel and inhuman treatment, including physical assaults upon her. The Chancery Court of Leflore County granted her a divorce from defendant, after finding that all of the allegations of fact in the original bill were true. In February 1961 Mrs. Beckwith and petitioner were remarried, and in September 1962 she again filed a bill for divorce, again alleging habitual cruel and inhuman treatment of her, including physical vio-

lence. Beckwith contested the second action. On October 9, 1962 the Chancery Court of Leflore County granted her a divorce from him, finding that the facts alleged in the bill were true. The state also introduced in evidence a judgment of a justice of the peace of Leflore County, based on an affidavit by Mrs. Beckwith, in which that court found she had just reason to apprehend that petitioner would carry out a threat to kill her, and required him to make a peace bond for a term of six months. This was all of the evidence offered by the state on its motion for a psychiatric examination.

For the defendant, Stanny Sanders, one of Beckwith's attorneys, testified: "He has been able to confer with us logically and in my question — in my judgment as one of his attorneys there is no question but that Mr. Beckwith is able to confer with his counsel in a logical manner and to make a rational defense in this cause which is now pending against him. My associate attorneys, whom I have already named, are of the same opinion."

After the hearing the Hinds County Circuit Judge rendered an opinion, in which he concluded, in effect, that there was a probability of present insanity, and appointed Dr. W. L. Jaquith, a psychiatrist, to make a psychiatric examination of the defendant. The order for mental examination (dated July 19, 1963) stated it was based on Code section 2575.5; and the evidence raised a question as to the mental condition of defendant. It directed Dr. Jaquith "to make a careful examination into the mental condition of the defendant"; ordered the Sheriff of Hinds County to cooperate with Dr. Jaquith; and authorized him to transport the prisoner to the hospital at Whitfield, which is in Rankin County.

II.

Around July 31 Beckwith's three attorneys filed the present petition for writ of habeas corpus, to the Judge

of the Eighth Circuit Court District, which includes Rankin County, location of the hospital, and which is adjacent to Hinds County, in a separate district. It recited the facts of indictment, his transfer to the hospital for psychiatric examination, and alleged that the order of July 19 committing him was void, since it was without any limitation, and authorized determination of Beckwith's sanity both at the time of trial and also at the time of commission of the alleged crime. The petition averred that the evidence in the hearing before the Circuit Court of Hinds County showed without dispute that Beckwith was mentally capable of making a rational defense; that he was entitled to a speedy trial, and the order for psychiatric examination denied him that right and due process of law under the state and federal constitutions. The state answered, the writ was issued, and a hearing was held on August 9, 1963 before Honorable O. H. Barnett, Circuit Judge of the Eighth District. A transcript of the proceedings on the motion for examination before the Circuit Court of Hinds County was introduced in evidence without objection by the state.

Judge Barnett held that proceedings under the statute were designed to determine Beckwith's ability to make a defense; the order did not provide it was for the purpose of determining his ability to make a defense to the crime with which he was charged; the evidence showed without dispute that he was capable of making a rational defense; and for those reasons the order was invalid. He overruled the state's motion to modify the order of the Hinds County Circuit Court, by restricting the examination to capacity to make a rational defense at the present time, on the ground he had no power to modify the order of another court. Hence the judgment of the Circuit Judge of the Eighth Circuit Court District sustained the petition for writ of habeas corpus, discharged Beckwith from confinement in the hospital, and held that, until further order, his custody was awarded

to the Sheriff of Rankin County, to await trial in the Circuit Court of Hinds County. The judge retained jurisdiction for the purpose of rendering such further orders as might be proper to see that Beckwith was present for trial on the murder indictment.

## III.

Beckwith could not take a direct appeal to this court from the July 19 order of the Circuit Court of Hinds County committing him to the hospital for psychiatric examination. A direct appeal was not available. It lies only from a final judgment. Miss. Code 1942, Rec., § § 1150, 1945. The committal order was not a final judgment. An appeal can not be taken without a verdict, judgment and sentence of the court. Lang v. State, 238 Miss. 677, 119 So. 2d 608 (1960). Since petitioner had no right of direct appeal, he either had to submit to the psychiatric examination or seek a remedy by applying for habeas corpus.

There is no issue on this appeal pertaining to insanity at the time of the offense. The test for insanity at time of offense is entirely different from that of capacity to stand trial. In the former, this court follows the majority, common law rule of the McNaghten case, by which the test of criminal responsibility requires an ability to know the difference between right and wrong at the time of commission of the crime.

 █ In the instant case, we are concerned solely with whether there was any evidence raising a reasonable probability placing "in question" the accused's "ability to make a defense," upon which to base the order for examination. Code § 2575.5. █ As to the last phrase, the court is concerned with a defendant being physically and mentally able to confer with his counsel as to the merits of the case, and to testify as a witness in his own behalf. In short, he should be able to comprehend his position and to participate rationally in his

defense. Eastland v. State, 223 Miss. 195, 78 So. 2d 127 (1955); McGinnis v. State, 241 Miss. 883, 891, 133 So. 2d 399 (1961).

██ █ Both before and after the 1960 statute, the rule has been that, where there is a reasonable probability that defendant is incapable of making a rational defense, the trial should not proceed until his mental condition has been investigated and it appears he is capable of standing trial. McGinnis held that the statute made no change in the law in reference to trying a person on present insanity. Its purpose was to authorize the circuit judge to appoint a psychiatrist and to pay for the expense of the examination from county funds. Cf. Miss. Code 1942, Rec., §§ 6909-11, 2499-2503, 2573-2575, 6777.

██ █ Code section 2575.5 requires that, before the psychiatric examination is ordered, the court should find that the defendant's ability to make a defense is "in question", meaning that there is such a reasonable probability that he is incapable of making a rational defense, as to warrant the psychiatric test. The essential basis of an order under section 2575.5 is a finding of such reasonable probability founded upon evidence supporting such a finding.

If such evidence exists, then the psychiatric examination under the statute may be ordered, as an aid to the court and the jury in determining the issue of present insanity. Assuming a properly authorized psychiatric examination has been made under the statute, the court and the jury may then consider the doctors' findings in determining, as a question prior to trial on the merits, the issue of present insanity. Robinson v. State, 223 Miss. 70, 81, 77 So. 2d 265 (1955). By its own terms section 2575.5 authorizes an order for psychiatric examination of an accused only where there is evidence indicating a reasonable probability that the defendant is incapable of making a rational defense.

■■ ■ The trial judge has a reasonable discretion when acting under the statute, but the statute defines the scope and limitations of orders under it. The discretion is a judicial one, including a requirement that there must be some evidence warranting a conclusion of reasonable probability, before an accused can be committed to a hospital for a lengthy psychiatric examination. Ordinarily orders under section 2575.5 are not controverted, since usually defendant or his counsel request or agree to them. Nevertheless, the statute has its limitations. It requires some evidential basis.

■■ ■ In the instant case there is no showing whatever that there is any reasonable probability that Beckwith is incapable of conducting a rational defense in the trial on the indictment against him. Hence there is no basis for the order for psychiatric examination. On the contrary, all of the evidence shows otherwise, namely, that he is entirely capable of standing trial. He is represented by three able and experienced attorneys. All of them agree that he has the present capacity to stand trial. The state's evidence does not contradict their conclusions reached after numerous conferences with defendant. Morehead, appellee's counsin and a lawyer, also said that there was no question but that accused was able to make a rational defense and confer with his counsel. The two divorce suits and the judgment for a peace bond do not indicate present incompetency to stand trial. Moreover, the Hinds County Circuit Judge did not indicate that any doubt of accused's sanity resulted from the court's own observation of him. See Eslick v. State, 238 Miss. 666, 119 So. 2d 355 (1960); 14 Am. Jur., Criminal Law, Secs. 44-47.

In short, there is no evidence in this record which raises a reasonable question or doubt that accused has insufficient soundness of mind to appreciate the charges against him, and the proceedings on them, and to enable him to make a proper defense. 23 C.J.S., Criminal Law,

Sec. 940(5)(b), p. 747. The evidence affirmatively reflects that there is no question as to appellee's present sanity.

### IV.

 In summary, the order attacked in this habeas corpus proceeding committed Beckwith to the Whitfield hospital for a lengthy psychiatric examination under Code section 2575.5. The order of committal was based on that statute and was in violation of its requirements. There was no evidence presented to the Circuit Court of Hinds County indicating a reasonable probability of present insanity. Moreover, although counsel can not determine the decision of a court, it is significant that the order was executed over the vigorous protests of the three able and experienced attorneys representing the defendant. Beckwith had no right of direct appeal to this court from that order, although it was invalid because it was not based upon justifying evidence and denied him his constitutional right to due process of law. Yet the order requires him to submit to this lengthy and necessarily detailed psychiatric examination.

The question is whether he is without remedy. We think not. The issue is uncommon but not without precedent, as will be indicated subsequently. We conclude that under these limited and qualified circumstances, petitioner had the right to attack the order by habeas corpus.

The Great Writ, as it has been called, is guaranteed by the constitution of this state. Section 21 states: "The privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion, the public safety may require it, nor ever without the authority of the Legislature." Miss. Code 1942, Rec., § 2815 states in broad terms, "The writ of habeas corpus shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty, . . ." Certainly ordering a man to a mental hospital for

lengthy psychiatric examination constitutes an illegal detention, where there is no adequate reason for the committal order, and it was beyond the statutory authority.

A proceeding to enforce the right of personal liberty by means of a writ of habeas corpus is civil and not criminal. State v. Gordon, 105 Miss. 454, 62 So. 431 (1913). On the other hand, the writ of habeas corpus can not perform the functions of a writ of error or an appeal. Scott v. State, 70 Miss. 247, 11 So. 657 (1892); Kelly v. Douglas, 164 Miss. 153, 144 So. 237 (1932). Moreover, interlocutory appeals can not be taken from preliminary orders of the circuit court. These principles are sound, and must be maintained. In Rogers v. Jones, 240 Miss. 610, 128 So. 2d 547 (1961), the Court recently restated in a comprehensive manner these essential limitations on the writ. They are sound. However, *Rogers* illustrates one reason why these limitations are not applicable in the instant case. There it was held that habeas corpus would not be issued to release prisoners upon grounds that pleas of guilty were fraudulently obtained at a time when their attorney was not present, and if they had a remedy, it was by writ of error coram nobis. The same parties subsequently proceeded with coram nobis and obtained relief. Rogers v. State, 243 Miss. 219, 136 So. 2d 331 (1962).

Here the order committing Beckwith was made before trial, and in this sense it was interlocutory. As we have also shown, it was void because exceeding the bounds of the statute and due process of law. Moreover, the carrying out of the order would subject petitioner without legal authorization to an intense psychiatric examination.

If Beckwith is without a remedy to test the order rendered under these circumstances, then a right of appeal after trial and final judgment would be meaningless. The psychiatric examination would be a fait ac-

compli. The argument for a need to use regular appeal processes is inapplicable under these circumstances.

Although this record affirmatively shows there were no improper motives by the state's attorneys in requesting the order of committal, we must consider basic legal principles in deciding particular cases. One student of this problem recently stated the dangers in permitting judicially unreviewable commitments:

"The rule on insanity at the time of trial (which incidentally is a rule which arose in a day when defendants were not afforded counsel) is actually being used for purposes other than that for which it was intended. . . .

"While present incapacity to stand trial is usually urged by the defense, it may also be raised in many jurisdictions by the district attorney or on the court's own motion. While ostensibly for the benefit of the accused, this procedure often works to deprive him of his constitutional right to a speedy trial. When defense counsel is available, there is little justification in allowing the plea of present insanity by the state. Quite frequently, the district attorney raises the issue of unfitness to proceed so as to put 'undesirables' away in cold storage without the benefit of trial. (They may not be convicted either under the McNaghten or other rules or for lack of evidence, or they may not be committable under the mental health laws.) The criminal charge serves as little more than a fictional jurisdictional excuse for inteterminate confinement." Slovenko, Psychiatry, Criminal Law, and the Role of the Psychiatrist, Summer 1963 Duke L.J. 395.

The Supreme Court of Ohio dealt with this particular problem in State ex rel. Smilack v. Bushong, 159 Ohio St. 259, 111 N.E. 2d 918 (1953), affirming *ibid.*, 112 N.E. 2d 675 (C.A. 1952). Smilack was indicted by the grand jury for refusal to testify upon subpoena before a standing committee of the general assembly. With counsel,

he pleaded not guilty. Thereupon the prosecuting attorney stated to the court that Smilack had previously had psychiatric treatment, that it was the feeling of people who knew him that he had a mental disease; and he asked the court to commit accused to the hospital for thirty days for observation and report as to his mental condition. Over the vigorous objection of defendant's counsel, the court acting under a statute sustained the state's motion. Thereafter Smilack filed a petition for writ of habeas corpus, and charged that his commitment was without any legal authority. Sustaining this position, the court said:

"The sending of a person to an institution for the criminal insane, even for a short time, is a serious matter and his confinement there is as full and effective a deprivation of personal liberty as in his confinement in jail.

"It appears from the record in the instant case that the accused was ordered taken to the Lima State Hospital for observation for a period not exceeding one month, against his vigorous protest and where he had pleaded not guilty to an indictment charging him with a misdemeanor punishable only by fine. Such confinement was made (1) on the unsworn statement of the prosecuting attorney for Franklin county as to his belief, based on hearsay, that the accused is not sane, (2) without any semblance of a formal hearing as to the accused's mental condition, and (3) without the presentation of any sworn evidence tending to prove insanity.

"That procedure was not such as is contemplated and required by the statutes quoted and operated to deprive the accused of the due process of law guaranteed by Section 16, Article I of the Ohio Constitution, and the Fourteenth Amendment to the federal Constitution."

In re Lutker, 274 P. 2d 786 (Okla. 1954), also upheld the right of an original action in habeas corpus to obtain release from a mental hospital under a commitment for psychiatric examination. Lutker was indicted for in-

decent exposure, and pleaded not guilty. Immediately after arraignment the county attorney in open court moved the court for an order of committal, and such order was entered over the objection of defendant's counsel. The Oklahoma statute provided that, if a person is held on criminal charges, "and the question arises as to his sanity or state of mental health", he could be committed to a state hospital for observation not exceeding 90 days. Lutker then brought a habeas corpus proceeding for release from the commitment. Discharge from that examination was granted, because he had not received notice and an opportunity to be heard before the order was made. The court cited with approval the Smilack case. It held the statute was valid, but that it was applied in an unconstitutional manner. Discussing the precise issue in the instant case, the Oklahoma court said:

"The order made on such application is not a final order and no appeal may lie from such order. It is merely a temporary or interlocutory order of committment pending the trial of the accused. The remedy of the accused where he feels the restraint is not in conformity with the law is by habeas corpus." See also People ex rel. Apicella v. Supt. of Kings County Hospital, 173 Misc. 642, 18 N.Y. Supp. 2d 523 (1940); 29 C.J.S., Criminal Law, '§ 940(2), p. 734; cf. Lynch v. Overholser, 369 U. S. 705, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962); Anno., 32 ALR2d 434 (1953); Anno., 142 ALR 961 (1943).

Hawie v. Hawie, 128 Miss. 472, 91 So. 131 (1922), involved a person held under indictment for murder and an attempt by the chancery court to inquire into his sanity. The circuit court had exclusive jurisdiction over Hawie, and it was the duty of that court to make the inquiry into his sanity. It was noted there was no statute at that time authorizing the circuit court to send a prisoner to a mental hospital. In the present

case, however, the circuit court of the county of indictment, acting under the statute, committed the accused
to the hospital for mental examination. This presents
an entirely different question from *Hawie,* because the
present issue is whether the circuit court's order was
entered within the authority of the statute.

In this state it has been held that relief may be granted
on habeas corpus "for incurable, radical, fatal defects,
plainly and indisputable manifest of record." White
v. State, 185 Miss. 307, 188 So. 8 (1939); Scott v. State,
70 Miss. 247, 11 So. 657 (1892). A defendant may also
obtain relief by habeas corpus for an order which the
court had no power to make, although it had jurisdiction
on the parties and the subject matter. McHenry v. State,
91 Miss. 562, 44 So. 831 (1907); Ex parts Burden, 92
Miss. 14, 45 So. 1 (1907); State v. Chambliss, 142 Miss.
256, 107 So. 200 (1926).

The order of the Hinds County Circuit Court, under
Code Section 2575.5, contained "fatal defects, plainly and
indisputably manifest of record." It exceeded the limitations of the statute, because there was no evidence
showing a reasonable probability of present sanity, and
therefore it operated to deprive petitioner of due process of law. A pretrial order committing an accused for
psychiatric examination can be successfully attacked only
when its issuance was a clear abuse of the trial court's
discretion. Collateral attacks on such orders are not
favored. The circumstances in which such relief on habeas corpus is available are qualified and limited. Yet
we are satisfied that this case falls within those limited
circumstances, and that discharge from the psychiatric
examination was justified.

The judgment under review, rendered by the Judge
of the Eighth Circuit Court District, is affirmed insofar
as it discharged Beckwith from confinement in the hospital and from the custody of Dr. Jaquith for psychiatric
examination as to present sanity. However, that judg

ment further awarded custody of appellee to the Sheriff of Rankin County to await trial in the Circuit Court of Hinds County. Since we hold that the July 19 Hinds County order was erroneously entered, Beckwith now should be transferred to the sheriff of the county of indictment. Accordingly, the habeas corpus judgment is amended in this respect, and it is ordered that the Sheriff of Rankin County deliver the accused, Beckwith, to the Sheriff of Hinds County for further proceedings under the indictment.

Affirmed as amended.

*McGehee, C. J., and Lee, McElroy, Jones and Brady, JJ.,* concur.

GILLESPIE, J., dissenting:

I concur in the able dissenting opinion of Justice Rodgers.

So that we may see clearly the new course charted by the majority, it should be pointed out that the habeas corpus proceeding in this case amounted to nothing less than a review by one trial judge of the acts of another trial judge in a discretionary procedural matter, where the habeas corpus judge reversed the first trial judge. If the order involved had been void on its face, the majority would be on firmer ground, but the habeas corpus judge weighed the evidence on which the other judge acted, and found it wanting. None of our cases cited by the majority involve this kind of review under the guise of habeas corpus.

RODGERS, J., dissenting:

With deference, I cannot agree with my colleagues, and I feel that I must point out the danger I see in the conclusion reached by the majority in this case. It is obvious to me that we are now moving in the new direction indicated by the United States Supreme Court,

as outlined in our opinion in the case of Rogers v. State, 240 Miss. 610, 128 So. 2d 547, and away from the ancient, true and hallowed purpose of the habeas corpus writ.

The Habeas Corpus Law was never intended to be a method of appeal from the orders of a court of general jurisdiction to this Court, through another court of equal jurisdiction and dignity.

Section 2815, Miss. Code 1942, Rec., is in the following language: ''The writ of habeas corpus shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty, or by which the rightful custody of any person is withheld from the person entitled thereto, except in the cases expressly excepted.''

This Court has pointed out that the foundation of the application for a writ of habeas corpus, in any court, is the allegation that the relator is unlawfully detained. Ex parte Walker, 53 Miss. 366.

The prisoner in the present case is confined in jail on a charge of murder. He is not permitted bail, (§ 29, Miss. Constitution), and he is therefore not illegally confined. The habeas corpus writ issued in the present case was not issued to release the prisoner or grant bail but was for the sole purpose of determining whether or not a circuit judge correctly exercised his discretion, from the evidence before him, as to whether or not he should perform the duty required of him to determine the ability of the prisoner to stand trial, by having him examined by a psychiatrist.

This Court has repeatedly held that a writ of habeas corpus cannot perform the functions of an appeal or a writ of error. Kelly, Sheriff v. Douglas, 164 Miss. 153, 144 So. 237; McLemore v. Love, 197 Miss. 273, 19 So. 2d 828; Rogers v. State, 222 Miss. 690, 76 So. 2d 831. It is only in instances when a prisoner is unlawfully held or detained on a void court order, or to fix the prisoner's bond, that the writ will issue to release a

prisoner from the custody of another court. See the recent case of Jackson v. Waller, Sheriff, 248 Miss. 166, 156 So. 2d 594. The order of the Circuit Court of Hinds County directing the examination of the prisoner by a psychiatrist was not void. The Hinds County Court retained exclusive jurisdiction of the prisoner and had authority under the law to require the psychiatric examination of the accused. The mere fact that the Circuit Judge of Hinds County did not write in his order that it appeared to him personally that he should have the prisoner examined by a psychiatrist does not void the order. The application for writ of habeas corpus in this case was not sought to release a prisoner accused of crime, for unreasonable delay in beginning the prisoner's trial. The prisoner was sent to jail in Rankin County.

The Circuit Court of Hinds County is a court of original jurisdiction, and has powers belonging to a court of oyer and terminer and general jail delivery. (Section 1428, Code 1942.) It is the court of constitutional dignity and has jurisdiction "in all matters civil and criminal * * * not vested * * * in some other court * * *" (Miss. Constitution, § 156.)

This Court held in the case of Hawie v. Hawie, 123 Miss. 473, 91 So. 131, that where one was held in jail under an indictment for murder in Hinds County by authority of the Circuit Court of Newton County, the prisoner was under the *exclusive* jurisdiction of the Circuit Court of the county where the indictment was pending, namely, Newton County.

However much one may feel as a matter of personal opinion, that one should not be examined by a doctor over his objection, it is nevertheless the law that the circuit judge may have him examined on his own motion. (Section 2575.5, Code 1942, Rec.) It has been widely accepted as a general rule that the trial court could have a prisoner examined by doctors to determine his

mental capacity to make a rational defense. See Anno.
142 A. L. R. 999. Moreover, since the court has inherent
power so to do, there is nothing new about the above
code section except the payment of the psychiatrist. Mc-
Ginnis v. State, 241 Miss. 883, 133 So. 2d 399.

Many years ago (1899) in the famous case of Lips-
comb v. State, 76 Miss. 223, 25 So. 158, the trial judge
appointed a number of physicians to examine the ac-
cused mentally to determine whether or not he was
capable of making a rational defense. On appeal, this
Court held that it was not error to require the accused
to submit to such an examination.

In Shipp v. State, 215 Miss. 541, 61 So. 2d 329 (1952),
the trial judge appointed a psychiatrist on motion of
the State, and this was before the present law was
enacted. In Musselwhite v. State, 215 Miss. 363, 60 So.
2d 807, this Court reminded the trial judge of his re-
sponsibility, and quoted Cooley on Blackstone, Vol. IV,
p. 24, as follows: ''The right of the sovereign to exe-
cute one who is insane has always been denied at least
since the repeal of Statute, 33 Henry VIII, c. 20. The
present humane view is thus expressed by Blackstone:
'If a man in his sound memory commits a capital of-
fense, and before assaignment for it, he becomes mad,
he ought not to be arraigned for it; because he is not
able to plead to it with that advice and caution that
he ought. And if, after he has pleaded, the prisoner
becomes mad, he shall not be tried; for how can he make
his defense? If, after he be tried and found guilty, he
loses his senses before judgment, judgment should not
be pronounced; and if, after judgment, he becomes a
non-sane memory, execution shall be stayed: for perad-
venture, says the humanity of the English law, had the
prisoner been of sound memory, he might have alleged
something in stay of judgment or execution.' '' See Rat-
cliff v. State, 201 Miss. 259, 29 So. 2d 321; Carter v.
State, 198 Miss. 523, 21 So. 2d 404.

In Rogers v. State, 222 Miss. 690, 76 So. 2d 831, the accused objected to the testimony of court appointed psychiatrist on the ground that the accused was compelled to give evidence against himself in violation of § 26, Miss. Constitution. In answer to this contention, this Court said: "The burden was on the court to determine whether or not he then had sufficient capacity to conduct a rational defense. These witnesses were experts in their field. Obviously they were in position to give more reliable information than lay witnesses. * * * It would be an anomaly indeed to charge a court with the responsibility of determining whether or not an accused has sufficient capacity to conduct a rational defense, when he is called to the bar to answer for a crime, and then make it impossible for the court to discharge its responsibility by denying to it the right and power to appoint expert witnesses to aid the court in quest of the truth. Such right and power must be held to be inherent in the court." Cf. Anno. 142 A. L. R. 961; 32 A.L.R. 2d 434.

Who, then, is to determine whether or not the trial judge is in need of expert testimony to perform his duty with reference to whether or not the accused is mentally capable of defending himself in a capital case? In the outset, let it be said, I agree with the majority opinion wherein it is said, before one is tried on an insanity plea, (§ 2575, Code of 1942), there must be "reasonable probability" of the insanity of the accused. This requirement is necessary when the court calls the jury to determine the present insanity of the accused and when the case may be indefinitely postponed while the defendant is in a mental institution. See Robinson v. State, 223 Miss. 70, 77 So. 2d 265; Skinner v. State, 198 Miss. 505, 23 So. 2d 501; Davis v. State, 151 Miss. 883, 119 So. 805; Eslick v. State, 238 Miss. 666, 119 So. 2d 355. The question of probable cause as to the inability of the accused to rationally defend himself is what the

judge is trying to discover when a "doubt" has arisen in his mind, as to the mental condition of the accused so as to determine whether or not to submit the question to a jury under the authority of § 2575, Miss. Code 1942. If a judge knew accused was incapable of rationally defending himself, or knew there was "probable cause", he would not need the assistance of expert witnesses. I am of the opinion that the judge can call to his aid psychiatrists whenever the court is in "doubt" as to the mental condition of an accused, and that it is his duty to so do. See Fralick v. State, 212 P. 377 (Ariz. 1923).

The true rule is set out in 23 C. J. S., Criminal Law, § 940 (2), p. 730, as follows: "The question raised on a motion for trial of the issue of accused's sanity is not whether he is actually insane, but whether the facts are sufficient to raise a reasonable doubt of his sanity, that is, as to the ability of accused to understand the charges against him and to conduct his defense in a rational manner; and the doubt contemplated by the rule is a doubt in the mind of the judge and not in that of some third person, such as counsel for the defense.

"The law contemplates that the doubt of the accused's sanity may arise either from the court's own observation or from evidentiary facts presented to it; and when the question is raised by motion, special plea, or oral suggestion the court should, in determining it, weigh and consider all relevant facts bearing thereon, whether offered in support or in opposition * * *"

It is said in 14 Am. Jur., Criminal Law, § 45, p. 802, that various facts are considered in determining the existence of present insanity which will prevent the trial of a person for crime. "The broad question, of course, is whether the accused, in so far as it may devolve upon him, may have a full, fair, and impartial trial. A component part of this question is whether the accused is mentally competent to make a rational defense."

In the case of Shipp v. State, 215 Miss. 549, 61 So. 2d 329, this Court quoted from the first Hawie case (125 Miss. 589, 88 So. 167) as follows: ''But if there be *any doubt* whether the party be compos or not, this shall be tried by a jury.'' (Emphasis supplied.)

The law contemplates that a ''doubt'' of the ability of the accused to properly defend himself because of his mental condition may arise from the court's own observation, or from evidentiary facts presented to it. In the case of Hawie v. State, 125 Miss. 589, 88 So. 167, this Court said ''if, at the arraignment of a defendant * * * it is suggested or *appears* to the court that he may be insane, the question of his sanity vel non should be inquired into and determined * * *'' The test of a defendant's sanity in an inquiry to determine whether he should be put on trial in a criminal case is whether he can then make a rational defense. This seems to be the universal rule. 23 C. J. S., Criminal Law, '§ 940 (2), at p. 731.

In the case of Carter v. State, 198 Miss. 523, 21 So. 2d 404, this Court said: ''When it is made to appear in the trial court that the mentality of a defendant in a criminal case is probably of this character, (insanity) this trial should not be proceeded with until the question has been investigated, and it has been made to appear that he is sufficiently rational for the purposes of his defense.''

It has been held by this Court prior to the enactment of '§ 2575.5, Miss. Code 1942, Rec., that the inability of a defendant to rationally defend himself may be brought to the attention of the court orally by the defendant himself. Skinner v. State, 198 Miss. 505, 23 So. 2d 501. His attorney may also suggest that defendant is insane. See Olsen v. State, 224 Miss. 226, 79 So. 2d 841; Davis v. State, 151 Miss. 883, 119 So. 805; Shipp v. State, 215 Miss. 541, 61 So. 2d 329; Pace v. State, 218 Miss. 616, 67 So. 2d 521.

When it is suggested to the court that the defendant is incapable of making a rational defense, it becomes the duty of the court to determine that question before proceeding further, and the court may even empanel a second jury if necessary to determine the mental capabilities of an accused. Gilmore v. State, 225 Miss. 173, 82 So. 2d 838.

The question of "doubt" as to the sanity of an accused may be submitted to a separate jury, and is a question within the sound, legal discretion of the trial judge. This rule is expressed by one textwriter in the following language: "Psychiatric examination. In making its determination as to whether to hold a separate trial or hearing as to accused's mental condition at the time of the trial, the court may properly seek the opinion of a psychiatrist. In fact, under a statute so providing, the court must, on the filing of a proper motion, cause a psychiatric examination of accused to be made; and only if the report of the psychiatrist indicates insanity or mental incompetency on the part of accused person is the court required to hold a hearing." 23 C. J. S., Criminal Law, § 940 (2), at p. 732. See also Olsen v. State, 224 Miss. 226, 79 So. 2d 841. This question is annotated in 142 A. L. R. 966, wherein it is pointed out that "In the absence of a statutory provision to the contrary, the granting or denial of an investigation of the present sanity of the accused to determine whether he shall be put on trial, or whether his trial shall continue, is within the *sound discretion of the trial court.*" (Emphasis supplied.)

While some writers on psychiatry may believe the court's acts on motions to determine the capability of a defendant to defend his case is a method of putting undesirables away in cold storage without the benefit of a trial, this Court has expressed itself in a different vein in Lipscomb v. State, 76 Miss. 223, 25 So. 158, as follows: "The trial judges are presumed to be honest,

impartial, and capable officials, and they should be permitted to exercise that discretion in such matters which the law invests in them; and a conviction for crime ought not to be reversed for such reason as that we are considering, unless the case be indeed an extreme abuse of discretion * * * While we are not prepared to give judicial sanction to everything that was done by the learned judge of the court below in order to satisfy his mind of the real truth concerning the appellant's mental and physical condition before denying the application for continuance, yet we do not hesitate to adjudge, looking at this record as a whole, viewing the proceedings in the court below from the standpoint of a concluded trial, that sound judicial discretion is not shown to have been abused, and that it is manifest that the court below honestly and impartially endeavored to adjudge in accordance with the very truth. We do not think the fact that the judge received the sworn report of the physicians appointed to examine appellant constitutes reversible error.''

As a general rule of law, the appellate court will not set aside an order of a trial court, based upon a determination of fact which rests in the sound discretion of the trial judge, unless an abuse of discretion is clearly shown. 5A C. J. S., Appeal and Error, '§ 1643, p. 230.

It is said in 2 Am. Jur., Appeal and Error, '§ 142, p. 936, that ''In some jurisdictions, the decision of the trial court in refusing an inquest to determine the sanity of the prisoner has been reviewed, although the decision of the lower court was followed, in the absence of evidence greatly preponderating against its finding. It has, however, been held that the ruling of the court upon the application for a hearing as to the sanity of the prisoner is not reviewable by appeal or writ or error, and that the judgment of the trial court adjudging defendant to be sane is conclusive of that issue.''

I am, for the reasons set forth above, of the opinion that the Circuit Court of Rankin County had no authority to retry the issue as to whether or not the Circuit Judge of Hinds County should have a prisoner examined by a psychiatrist to determine his capability to present a rational defense. The trial under a writ of habeas corpus proceeding was not warranted, and the order should not have been issued releasing the prisoner from the custody of the authorities at Whitfield, and returning him to jail.

KYLE, J. joins in this dissent.