Rogers *v.* State

No. 40185 October 15, 1956 89 So. 2d 860

*Harvey T. Ross, Wm. H. Beck, Jr.,* Clarksdale, for appellant.

*J. R. Griffin, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

GILLESPIE, J.

Appellant was indicted under Section 2143, Mississippi Code of 1942, as amended. There is no dispute about the facts. The only question for our determination is whether the case is one within the letter, scope and purpose of the statute.

One Boling was unconventionally interested in the wife of one Campbell, and it fitted in with the designs of Boling to have Campbell out of the way. Appellant was acquainted with Boling, who proposed to appellant a scheme whereby both of them could make some real money. The scheme was to kill Campbell. Boling told appellant that if Campbell met violent death there would be $20,000 insurance on his life, and that he, Boling, would get half of it which would be divided one-half to Boling and one-half to appellant. Actually, there was no insurance in force on Campbell's life, but appellant thought otherwise. A plan was devised to place dynamite under the house of Campbell and thus destroy him, but that could not be done because of the presence in the house of Mrs. Campbell and her child. Another plan was then made. Campbell was a bus driver for the Clarksdale City Bus Lines, Inc., and each night he brought the bus to his residence in the City of Clarksdale and parked it in his driveway where the bus remained until time for Campbell to start the next day's run. Boling and appellant decided to place dynamite in the bus so that it would explode upon the ignition being turned on by Campbell when he boarded the bus to start his morning run. Accordingly, Boling obtained wire, a number of sticks of dynamite, and a box of caps. They tested the equipment to be sure the wiring apparatus would work, then made a bomb by securing together four sticks of dynamite. Appellant and Boling then drove to the area of Campbell's home and appellant placed the bomb on top of the transmission of the bus while it was parked in Campbell's yard. This was done about

midnight. The bomb was wired to the bus in such manner that it would detonate when the switch was turned on.

The next morning Campbell got on the bus to start his run and when he turned on the switch, the bomb exploded. Campbell was horribly maimed and the bus was wrecked. Campbell lived, however, and testified at the trial.

Appellant was separately tried, convicted, and upon the jury's failure to fix the punishment, the circuit judge sentenced him to life imprisonment.

Section 2143, Code of 1942, as amended, is as follows: "It shall be unlawful for any person at any time to bomb or to plant or place any bomb or other explosive matter or thing in, upon or near any building, ship, vessel, boat, railroad station, railroad car or coach, bus station or depot, bus, truck, or other vehicle, gas and oil stations and pipe lines, radio station or radio equipment or other means of communication, warehouse or any electric plant or water plant, telephone exchange or any of the lines belonging thereto, wherein a person or persons are located or being transported, or where there is being manufactured, stored, assembled or shipped or in the preparation of shipment any goods, wares, merchandise or anything of value, with the felonious intent to hurt or harm any person or property, and upon the conviction thereof shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term as the court, in its discretion, may determine."

■■ ■ Appellant first contends that under the words of the statute no crime was proven. He argues that he did not bomb the bus because he did not hurl, throw or drop the explosives onto the bus, and that he is not guilty of placing or planting the bomb or explosive matter in the bus because at the time the bomb was placed,

no one was in the bus. It is not necessary to hurl, throw or drop the bomb onto the bus to constitute bombing a bus. ▉▉ Appellant seeks to limit the term "to bomb" to its military significance. There can be no doubt that the noun "bomb", as used in the statute, was intended to designate an infernal machine employing explosives contrived by criminals to accomplish bodily injury or destruction of property. The Encyclopedia Americana, Vol. 4; State v. Londe (Mo.), 132 S.W. 2d 501. The first time the word "bomb" appears in the statute, it is used as a verb, and it would be idle to contend that it meant something other than the use or employment of a bomb to accomplish injury or death to a person or persons or to destroy property. ▉ ▉ We hold, therefore, that the acts done by appellant are clearly within the words of the statute.

▉▉ ▉ There is no merit in the contention that the statute was not violated because no one was in the bus when the bomb was placed there by appellant. Campbell was in the bus when the bomb exploded, which was sufficient to satisfy the requirements of the statute that the bus be occupied. The explosion was part of the bombing, and the bus was then occupied by Campbell.

Appellant makes the further contention that appellant did not violate the letter or spirit of the statute. His argument in this respect is that Section 2143 was one of a number of statutes enacted at the regular session of the legislature of 1942, which was the first session after the entry of the United States into World War II, and that these acts were all laws dealing with wartime emergencies, and that Section 2143 was directed at treason and sabotage; that in 1947 a bitter strike developed in one of the transportation industries of the state accompanied by violence, whereupon, the governor assembled the legislature for the specific purpose of dealing with the violence attending that situation; that

several clauses were added to Section 2143 so as to deal with the strike violence. Laws 1947, Chap. 7, (ed Ex.)

Appellant argues that appellant did no more than plot the murder of Campbell, and made use of the bomb as the means, and the bus as the place, to accomplish the act; that the case does not come within the scope and purpose of the statute, and that appellant should be tried under the general statute denouncing assault and battery with intent to kill, Section 2011, Miss. Code of 1942.

Appellant cites and relies upon the case of Fortenberry v. State, 190 Miss. 729, 1 So. 2d 585. That case involved a construction of the statute making robbery a capital offense when the robbery is accomplished by violence or putting the victim in fear of immediate injury to his person by exhibition of a deadly weapon. In the Fortenberry case it was held that in considering the meaning of a new and supplemental enactment it is the duty of the court to take into consideration the facts and circumstances leading up to the new enactment, the history of the times, and the particular characteristics of the specific evil which the new and supplemental statute was designed to curb, and apply the new statute to that particular evil with its classifying characteristics, leaving the old statute to cover such cases as do not definitely and distinctly belong to the particular evil and the particular characteristics of that evil at which the new statute was directed; and the court must see that it was not only the particular means to which the new statute was directed, but also, as an essential element, the particular intent which attended the use of the means, the real end toward which the means is applied, and that the particular intent must be one in which the accomplishment of the particular evil denounced by the statute was the dominant or primary purpose of the accused, and which is not to be supplied by that which hap-

pens as a mere incident to, or as a collateral development in, some other main and primary purpose.

■■ ■ In the light of the rules just stated, and the words of the statute itself, it is clear to us that the particular evil sought to be curbed by the enactment of Section 2143, as amended, was violence to persons or property, and the classifying characteristics of that particular evil is the employment or use of bombs or other explosives in, upon or near any bus (or other objects and places designated in the statute) as the means and place to accomplish the evil..

■■■ The particular intent which attended the use of the means employed by appellant, the real end towards which the means were applied as a method of accomplishment, was to do violence to the person of Campbell, which was the dominant or primary purpose of the accused; and it can not be contended with any force that the intent was supplied by anything which happened as a mere incident, or as a collateral development in, some other main and primary purpose. As to the means used and the place where the means were applied, which are the classifying characteristics of the evil at which the statute is directed, as well as the particular intent to accomplish the particular evil to which the statute is directed, as well as the particular intent to accomplish the particular evil to which the statute is directed, the proof of the State was sufficient to make out a case under the statute.

It is argued that it was not the intention of the legislature by enacting the 1947 amendment to provide a more severe penalty for the crime of assault and battery with intent to kill and murder, but that it intended to enact a law to "prevent threats, intimidations, acts of violence or acts of terror and provide suitable punishment therefor," as provided in the Governor's proclamation calling the legislature into session. Under the rules laid down in the Fortenberry case, the State made

out a case that definitely and distinctly belongs to the particular evil and the particular characteristics of that evil and the particular characteristics of that evil at which the amended statute is directed. The legislature provided for the death penalty or imprisonment for all crimes coming within the statute. What might have constituted a lesser crime before the amendment became a capital crime under the new enactment.

 The rules of construction herein stated do not require or authorize this Court to limit the application of the statute to cases where the bus in question was carrying passengers on public ways, or when there was a strike in progress. We must apply the statute as written within the limitations of the rules of construction applicable to such new enactments.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Arrington, JJ.,* concur.