THOMPSON *v.* STATE

No. 40635 October 7, 1957 97 So. 2d 227

*H. G. Stamper, L. B. Porter,* Union; *S. T. Roebuck, A. B. Amis, Jr.,* Newton; *W. H. Johnson, Jr., Benton R. Gordon,* Decatur; *Robert Everett,* Ruleville; *W. M. Everett,* Hickory; *R. S. Majure,* Newton, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

The appellant, Joe Louis Thompson, was jointly indicted with Tolbert McKenzie, Jr., in the Circuit Court of Newton County for the murder of J. Z. Jones. The ap-

pellant was tried separately, convicted, and sentenced to death. From this judgment he appeals.

The record discloses that the appellant and McKenzie, on December 24, 1956, about 1:30 o'clock A.M., each armed with a shotgun and wearing masks, entered the Colonial Cafe located about two miles east of Newton on U. S. Highway 80, and robbed J. Z. Jones, the owner of the cafe. While the robbery was being carried out, the robbers were observed by an officer of the Highway Patrol who was off duty. He attempted to arrest one of the robbers and shooting began; the patrolman was wounded and Jones was killed. An alarm was given and the Sheriff of Scott County, an adjoining county, set up a road block at an intersection on Highway 80, and about 3 o'clock A.M., arrested the appellant, who was then driving a pickup truck that did not belong to him. He was placed in the Scott County jail, and was later turned over to the Sheriff of Newton County, who, in turn, delivered him to the Highway Patrol to be brought to the Hinds County jail.

There is no conflict in the evidence as to appellant's guilt. The appellant did not testify in his own behalf and offered no evidence. The evidence on the part of the State shows without dispute the guilt of the appellant beyond every reasonable doubt and to a moral certainty.

■■ ■ The appellant first contends that the court erred in proceeding to try him separately, contending that he was jointly indicted with McKenzie; that he did not request a severance and was entitled to a joint trial. The record shows that the Circuit Court of Newton County convened on the third Monday of March, which was March 18, 1957. On this date, McKenzie was still at large. The appellant was arraigned and on March 19 a special venire was summoned, returnable on the second Monday, which was March 25. On March 24, McKenzie was arrested, after being shot in the leg at the time. Although the record shows that McKenzie was present

at the time of the trial, he was in no condition to stand trial because he required surgery on his leg.

The lower court overruled a motion of appellant for a joint trial and proceeded with the trial of appellant separately. In the case of Malone v. State, 77 Miss. 812, 26 So. 968, this Court settled this question. In that case, Press Malone and Jesse Malone were jointly indicted for assault with intent to kill and murder. At the time of trial, Press Malone was ill and the continuance of the case was had as to him, and Jesse Malone was put on trial over his objection to be tried in the absence of his co-defendant, which he claimed operated as a severance, and the court could not affect without the consent of the person tried. In replying to this contention, the Court said:

"We see no error in putting Jesse upon trial in the absence of his co-defendant. At common law the trial court could sever the defendants for trial at its discretion. 1 Bishop's New Cr. Pr., Sec. 1018; Wall v. State, 51 Miss. 396. Our statute, code 1892, Sec. 1417, changes the common law to the extent of securing a severance to a defendant in cases of felony if seasonably applied for by him."

"A right to a separate trial does not give defendants the right to demand to be tried jointly, and the court in its discretion may order separate trials over an objection that defendants should be tried together. . . . . Under statutes considered in the preceding section, and conferring on defendants jointly indicated the right to separate trials on demand, by failure to demand separate trials the defendants do not become entitled as of right to receive a joint trial, such matter resting in the court's discretion." 23 C.J.S., Criminal Law, Sec. 934. See also 53 Am. Jur., Trial, Secs. 56, 57, 58.

It follows that the lower court committed no error in trying the appellant separately.

■■■ The appellant argues that the court erred in admitting the confession of appellant in evidence. The record discloses without contradiction that the appellant was arrested on the morning of December 24, 1956, and on that date made a free and voluntary confession. This confession was made to two members of the Highway Patrol. According to the evidence, the appellant related the facts, which were taken down by a stenographer and transcribed, and later approved by the appellant. The court conducted a preliminary inquiry as to the admissibility of the confession in the absence of the jury. The testimony of the patrolman was that the appellant was advised of his rights, that the confession was not induced by fear, threat, or promise of reward. The appellant offered no testimony to the contrary. The confession of the appellant is as follows:

"Jackson, Mississippi
"24 December 1956

"I, Joe Louis Thompson, make the following free and voluntary statement to Sam Ivy and Ed Ainsworth, who I know to be officers with the Mississippi Highway Patrol. No threats or promises have been made against me and I know that anything I might say may be used in a court against me. I have been advised of the right of a lawyer.

"I am 20 years of age and was born at Sturgis, Mississippi.

"Last night, December 23, 1956, at about 10:00 P.M., at Buckatuna I met Buddy McKenzie, another negro who I had known about 10 days. Buddy McKenzie was driving a 1955 white chevrolet and this car had a Alabama tag on it. He told me to get in the car and let's go. Buddy McKenzie drove out a gravel road and stopped and we got out. We picked up two shot guns which were lying hid on the side of the road and we put them on the back seat. Buddy McKenzie and myself left Buckatuna

about 10:30 P.M. and drove to Meridian on Highway 45. At Meridian we took Highway 80 and drove to Newton, Mississippi, and arrived there about 12:30 A.M. When we left Buckatuna the two of us agreed to rob the first cafe we found open. As Buddy and myself were coming into Newton on Highway 80 we noticed a cafe open on the left side of the highway. We parked the car at the West entrance of this cafe. We sat there about 5 minutes, got out and I took an automatic 12 gauge shot gun out of the rear seat and Buddy took a pump shot gun. Buddy told me the guns were loaded, and he gave me about 8 shot gun shells which I put in my pocket.

"We walked to the front of this cafe. Both of us went in the filling station side of this cafe first. Buddy told a white man to hole them up. I then came back out the front door and went in the door to the cafe side. As I came in I heard the report of a gun which sounded like it was at the entrance between the filling station office and the cafe. I told them to stick 'em up and put their hands up. There was one white man behind the cash register and several other white people in the place. I told the white man to give me the money. The white man put the money in a paper sack and laid it on the counter and I got it. When I picked up the money at the cash register Buddy McKenzie went back into the filling station office and carried the white man with him. When I got the money I heard a car drive up outside and I saw a white man coming toward the building through a window. This man stopped and went back to his car. I started out the back door and called to Buddy McKenzie and told him to come on there was somebody out front. As I started out the back door that led out the side of the building, somebody started shooting at me and I ducked back in the cafe. I shot out the door once and peeped around and I eased out and started down the steps and jumped down to the ground. I ran into a wire fence at the back of the building. Just as I started under

somebody shot at me and I saw the flash from the gun on the Meridian side of the building and I shot back at this flash one time.

"I kept on running in a field and hit a gravel road and I went to the home of my cousin, George L. Wash. I went in and changed clothes. George gave me a change of clothes. I told Miss Tilda who is the mother of George, that she could have this automatic shot gun I had and she thanked me. I stayed at this house about 5 minutes.

"I left George's house and walked on toward uptown in Newton. About 4:00 A.M. I was arrested in Forest by officers in a '48 red pick up truck.

"When the shooting took place at the cafe that we were robbing, me and Buddy got separated and I haven't seen him since.

"They carried me to the Scott County Jail and I took the money that I had on me that I got from the cafe and I took the money from the paper sack and hit it under the mattress in the jail. Later, I led the officers to the place and showed them the money.

"This is a true statement to the best of my knowledge, consisting of one page and three and one-half lines on another page.

 "Signed Joe Louis Thompson
"Witnesses:
"/s/ E. J. Ainsworth
"/s/ Sam Ivy (MHP)

The confession is fully corroborated by the evidence on the part of the state and is consistent with the physical facts and circumstances. The automatic shotgun which the appellant referred to in his confession was found where he said he left it on the day of his arrest. Four shells were picked up in the vicinity of the shooting, as related by the appellant in his confession. These shells and the gun were sent to the Federal Bureau of Investigation Laboratory in Washington; Mr. George Berley of

the Bureau testified that he received the gun and the four shells and identified two of the shells as having been fired in the shotgun used by the appellant in the robbery. The money obtained in the robbery, as related by the appellant in his confession which was hidden in the jail, was recovered by the officers and introduced in evidence.

 The appellant next contends that the confession was inadmissible for the reason that he was unlawfully detained and was not given a preliminary hearing. According to the evidence in this record, the confession was not the result of any illegal detention, and we find no merit in this contention. Moore v. State, 207 Miss. 140, 41 So. 2d 368, 338 U.S. 844, 70 S. Ct. 93; Robinson v. State, 223 Miss. 70, 77 So. 2d 265, and authorities there cited.

 The appellant next contends that the court erred in overruling his motion for a change of venue. The application for change of venue was filed on March 25, 1957, after the special venire had been summoned and while the jury was being empaneled to try the appellant. Section 2512 of the Mississippi Code of 1942 requires that in capital cases the application for change of venue must be made before a special venire is drawn, or it will be too late, except where the ground on which such application is based occurred after the drawing of such venire. Section 2508 of the Code of 1942 provides:

"On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a conven-

ient county, upon such terms, as to the costs in the case, as may be proper.''

The motion for change of venue filed in this case does not comply with the statute in that it is not supported by the affidavits of two or more credible persons.

In Purvis v. State, 71 Miss. 706, 14 So. 268, the Court held that an application for a change of venue not in writing and not supported by the affidavits of two or more credible persons did not conform to the statute and was properly refused for that reason.

██ ██ The appellant also made an oral motion for a change of venue, contending that he could not secure a fair and impartial trial in Newton County. The appellant did not introduce any witnesses to support his application. The State introduced seven witnesses, which included public officials, former county officials, a newspaper man and a minister of the Gospel. Their testimony was to the effect that there was no prejudice or ill will toward the appellant in Newton County and that he would be able to secure a fair and impartial trial. It was also shown that the appellant did not exhaust his peremptory challenges. We have held in numerous cases that where the entire record in a murder case, viewed from its conclusion and as an entirety, shows that the defendant has had a fair and impartial trial, free from bias and prejudice, the defendant has no right to complain because he was denied a change of venue. Wexler v. State, 167 Miss. 464, 142 So. 501. Shimniok, et al v. State, 197 Miss. 179, 19 So. 2d 760; Wheeler v. State, 219 Miss. 129, 63 So. 2d 517.

The judgment of the lower court is affirmed and Thursday, November 14, 1957, is hereby set as the date of execution.

Affirmed.

All Justices concur.