McGINNIS *v.* STATE

No. 41867, 42040 October 2, 1961 133 So. 2d 399

*J. P. Coleman,* Ackerman; *J. E. Brown,* Starkville, for appellant.

G. *Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

888

McGEHEE, C. J.

The above-numbered causes were consolidated and are being decided on the records made in the respective cases.

Lavelle McGinnis is alleged to have killed and murdered Bobby Moore on the twenty second day of November 1959. He was convicted of the crime of manslaughter and given the maximum sentence of twenty years in the state penitentiary. Prior to the trial his attorneys, former Governor J. P. Coleman and James E. Brown, who were representing the appellant in the place and stead of L. W. Brown, deceased, filed a petition under oath alleging that the appellant was mentally incapable of advising with his said attorneys and conducting a rational defense in the case; that he should be sent to the Mississippi State Hospital at Whitfield for observation and examination by the medical staff at that institution,

and that in the meantime the cause should be continued, awaiting the report of such medical staff at Whitfield.

In response to the above-mentioned motion, the State introduced several witnesses who testified mainly that prior to September 15, 1959, the defendant was, to their knowledge, doing good work as a painter. They were not asked anything in reference to the ability of the appellant to confer with his attorneys intelligently and conduct a rational defense or whether or not he could safely take the stand as a witness in his own behalf on account of his then mental incapacity when the trial was held several months later. Neither did the State file any answer denying the allegations of the petition on behalf of the defendant wherein he was alleged to be mentally incapable of conferring with his attorneys or of making a rational defense to the charge against him. Moreover, the petition further alleged that the defendant had given to the attorneys four different versions of what occurred at the scene of the homicide, and they stated in their sworn petition as officers of the court that if the defendant was forced to trial, they would not be able to put him on the witness stand to testify in his own behalf and that the case would have to be submitted solely on the testimony on behalf of the State.

On the other hand, the defense offered witnesses to show that it sometimes became necessary to take the defendant by the hand and lead him to where he was to perform his work as a painter on the occasion testified to by the State's witnesses over several months prior to the trial. Some of them testified that when he was supposed to use white paint that he would get a bucket of green paint to use.

Chapter 262, Laws of 1960, provides among other things the following: "In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the

district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; * * *."

Subsequent to the conviction of the defendant of the crime of manslaughter and his maximum sentence to the penitentiary for a term of twenty years, the cause was appealed to this Court and had been docketed for hearing in this Court. Thereupon some interested parties had the defendant committed to the Mississippi State Hospital at Whitfield. It is not contended that either of the attorneys for the defendant had anything to do with having him committed to Whitfield and only learned about it after it had occurred. Dr. J. J. Head testified that while the defendant was at Whitfield, that at a meeting of the medical staff at Whitfield when eighteen members of the staff were present, he, the said witness, questioned the defendant and that after this, all eighteen members of the staff agreed that he was then insane. This testimony was given on the hearing of a petition before the trial judge for a writ of error coram nobis, after the appeal of the case here, and the judge overruled the petition for a writ of error coram nobis presumably on the ground that this Court had already acquired jurisdiction in the case. The appellant appealed from the denial of the writ of error coram nobis and that appeal was consolidated in this Court with the appeal from the judgment of conviction. However, after the time of the trial and conviction of defendant, following the petition filed in his behalf asking that he be committed to the state hospital at Whitfield for observation and examination, the hearing on the application for a writ of error coram nobis was consolidated, on appeal, with the hearing on the merits of this appeal. It is because of this that we have before us the testimony of Dr. Head as to the unanimous conclusion of

the eighteen members of the medical staff after the defendant had been questioned in their presence.

While Chapter 262, Laws of 1960, may not be mandatory that the trial judge·shall have an accused examined by a psychiatrist when his present ability to conduct a rational defense and intelligently confer with his counsel as to the facts of his case is in issue, we are of the opinion that this statute was passed for a salutary purpose to avoid a defendant's ever being placed on trial for crime in this state unless he is at the time of the trial capable of conducting a rational defense by intelligently conferring with his counsel as to the facts in connection with the crime. We think that when the question of sanity was raised at the term of the court during which the case was tried and by sworn petition of these officers of the court, the judge would have had the right of his own motion to have had the issue inquired into on competent proof and determined prior to the beginning of the trial on the merits. Cf. Eastland v. State, 223 Miss. 195, 78 So. 2d 127. We think that this was essential under the facts of this case to comply with due process under the Federal Constitution. In the Eastland case, supra, this Court held that an accused should not be tried ''unless he is physically and mentally able to confer with his counsel as to the merits of the case, and to testify as a witness in his own behalf.'' See also Carter v. State, 198 Miss. 523, 21 So. 2d 404; Williams v. State, 205 Miss. 515, 39 So. 2d 3; Shipp v. State, 215 Miss. 541; 61 So. 2d 329; and Olsen v. State, 224 Miss. 226, 79 So. 2d 841.

In the cases of Carter v. State, Williams v. State and Shipp v. State, supra, the language of the Court is unequivocal to the effect that the trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it ap-

pears to the trial court that there is a probability that defendant is incapable of making a rational defense, the trial should not proceed until defendant's mental condition has been investigated and it appears he is sufficiently rational to make defense.

■■■ ■ Before the enactment of Chapter 262, Laws of 1960, Sec. 2575.5, Code of 1942, Rec., the circuit judge did not have authority in criminal cases to send a prisoner to an institution to determine whether or not he was insane. The section made no change whatever in the law in reference to putting a person to trial when he is incapable of rationally conducting his defense by conferring with his attorneys, etc., and taking the stand in his own behalf. As we see it, all the statute did was to authorize the circuit judge to appoint a psychiatrist and to pay for the expense thereof from county funds. It seems to us that all other matters were left unchanged by the statute. Certainly there was no change in the constitutional requirement of due process that a man must be capable of conducting his defense in a rational manner before he can be put to trial.

■■■ ■ In the instant case, the affidavit of the attorneys was sufficient to make a prima facie showing that the defendant was incapable of conferring with his attorneys and taking the stand or otherwise making a rational defense, and if no other proof were made on the issue of his immediate condition along these lines, the judge should have appointed a psychiatrist or sent him to Whitfield to determine the question. The proof that the state offered was not directed to his mental condition at the time of the trial but to his condition at some time in the past, therefore, the state did not meet the issue at all, and the record was left with the probability established that he was not capable of conducting a rational defense, and we think this is the basis on which the case should be reversed.

 We are of the opinion that we should point out that when a motion is filed by any party under this section the circuit judge, of course, has discretion to determine in the proper manner whether there is any probability that the defendant's mental condition makes it impossible for him to defend himself. But where the probability is established, as in this case, and where the state does not refute the showing of probable cause, he should not have been put to trial. This case is in a peculiar situation of subsequent events clearly showing that he was insane upon examination by the staff at Whitfield, with the probability that such condition had also existed at the time of the trial.

 The said Chapter 262, Laws of 1960, providing for the trial judge to order an examination of the accused by a psychiatrist when he is shown to be probably insane and incapable of conducting a rational defense has the effect of supplementing the former rule requiring the trial judge to empanel a jury to try such an issue preliminarily to the trial on the merits.

Since it was agreed that in the event the motion to commit the accused to the State Hospital at Whitfield for examination by a psychiatrist should be overruled by the court, then the case was to be tried on its merits on the following Saturday, we do not deal with this motion strictly as a motion for a continuance of the case, the decision of which is ordinarily left, under our decisions, to the discretion of the trial judge, but we think that the continuance would have merely followed as a necessary incident to the granting of the relief petitioned for.

Out of a desire to protect the rights of the accused in the premises and as a precaution against holding that an accused with an I. Q. of only 49 can be put to trial when he is shown by the undisputed sworn petition to have been mentally incapable of conducting a rational defense and of conferring intelligently with his counsel

as to the facts of his case, we have concluded that this cause should be reversed and remanded in order that the issue just above stated may be definitely determined prior to another trial.

Reversed and remanded.

*Arrington, Gillespie, McElroy* and *Rogers, JJ.*, concur.