236 So.2d 360 (1970)
Thomas Albert TARRANTS, III
v.
STATE of Mississippi.
No. 45684.
Supreme Court of Mississippi.
June 1, 1970.
Rehearing Denied July 2, 1970.
*361 Thomas M. Haas, Mobile, Ala., Roy Pitts, Meridian, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Wade H. Creekmore, Jr. and James H. Creekmore, Special Asst. Attys. Gen., Jackson, for appellee.
INZER, Justice.
Appellant, T.A. Tarrants, III, was convicted in the Circuit Court of Lauderdale County for the crime of planting a bomb in violation of Section 2143, Mississippi Code 1942 Annotated (1956). He was sentenced to serve a term of thirty years in the State Penitentiary. From this conviction and sentence he appealed to this Court.
After his appeal reached this Court and was argued by his counsel and while under consideration by us, appellant filed a motion asking that his appeal be dismissed because he did not desire to appeal his case. He also stated that the attorneys who had represented him in the trial court and in this Court no longer represented him. Since his principal defense in the trial court was insanity, before passing on the motion we determined that we should direct the trial judge, as a facility of this Court, to conduct a factual hearing in order that we could determine whether appellant was mentally competent to represent *362 himself in this Court and whether he was mentally competent to understand the effect of his motion to dismiss his appeal. In compliance with our order the trial judge entered an order requiring appellant to submit to a mental examination by the staff at the Mississippi State Hospital at Whitfield. Appellant was examined by the staff and after his examination and before we received the record of the proceedings from the trial judge, appellant filed a motion that he be allowed to withdraw his motion to dismiss his appeal. He stated in his motion that he had been advised by the doctors at the Mississippi State Hospital that he had a well-balanced mind, a high I.Q., and no mental disorder of any kind. He also stated that he advised his attorneys not to pursue the issue of insanity on appeal, but in spite of his direction his counsel for some reason defied him and violated his trust. He reaffirmed his decision to discharge his counsel. Included in this motion is a statement which we take to be a motion for a new trial on newly discovered evidence, which he alleges will show that he was entrapped.
After the foregoing motion was received and filed in this Court we received the report of the trial judge which contains the findings of the staff at Mississippi State Hospital. This report reveals that appellant has an I.Q. of 126 and it was the opinion of the staff of ten psychiatrists that he is a competent and responsible person, and that there was no evidence of insanity. After reviewing this report along with the evidence in the record of the trial of this case on the merits relative to the question of appellant's sanity, we are of the opinion that appellant is not insane and is mentally competent to discharge his lawyers and to represent himself in this Court.
The motion of appellant to withdraw his motion to dismiss his appeal is sustained. In considering the appeal on the merits we have considered it on the record made in the trial court and the briefs filed in this Court by counsel who then represented him. We deem it appropriate to state that the record reflects that appellant was ably defended by competent counsel in the trial court and that they filed excellent briefs in this Court. The brief filed on behalf of the State is likewise an excellent one covering all the points raised by appellant on appeal.
The facts as to the crime charged are as follows: During the summer of 1968 various citizens in the City of Meridian received bombing threats. One such person was Meyer Davidson. In an effort to protect lives and property the Meridian Chief of Police ordered a stake out of all those places whose occupants had been threatened. On June 30, 1968, Detectives Willoughby and McNair were stationed near the home of Davidson. This house is located at the northwest corner of 36th Street and 29th Avenue. The house faces south on 36th Street and has a driveway that enters from 29th Avenue. The two detectives were concealed just across 29th Avenue from the driveway of the Davison home. Shortly after midnight the detectives observed a dark colored Buick automobile approach the intersection from the east. When it reached the intersection it turned north on 29th Avenue and drove slowly up the street. A few minutes later the car came back down 29th Avenue from the north. As it reached the intersection it turned west in front of the Davidson home and went down 36th Street. Apparently the car circled the block because a few minutes later it again approached the intersection coming down 29th Avenue from the north. As the car approached the lights were turned out. It came to a stop adjacent to the Davidson property. A man got out, reached into the back seat, and picked up a box. This man was the appellant. He walked onto the Davidson property and placed the box in the driveway. When he did so, one of the policemen ordered him to halt. Appellant whirled and fired two shots in the direction of the officers, who returned the fire. Appellant ran back to the car, jumped in and drove south *363 down 29th Avenue. He was later apprehended.
An examination of the box disclosed twenty-nine sticks of dynamite, an electric cap and a home-made timing device, consisting of a clock and a dry cell battery. The officers took pictures of the box and its contents which are in evidence.
The foregoing facts relative to the commission of the crime are not in dispute. The other evidence concerns the issue of insanity.
Mrs. Doris Tarrants, mother of appellant, testified in his behalf. She stated that she had resided in Mobile, Alabama, all her life and that her son was born therein December 20, 1946. She stated that he had a normal childhood until 1963. At that time he was a junior at Murphy High School in Mobile and the school was integrated. She testified that after the confusion that occurred during this event the personality of her son changed. He became obsessed with the idea that the communists were taking over the country and he began to constantly read the Bible. She told of her son's involvement with the National States Rights Party and of his association with a man named Smith, who had been a minister and who had great influence on her son. She said that she and her husband became concerned about the conduct of their son and made an appointment with a psychiatrist to see him. He went to see the psychiatrist on one or two occasions but would not go back because he felt that his feelings were normal. She stated that from that time on the appellant was withdrawn and did not take part in the normal activities of a teenage boy. He later attended Mobile Baptist College for awhile but the FBI started questioning his friends. He then came home one afternoon to find the FBI questioning his fourteen year old brother. Appellant left home at that time and she did not see him again from March until July when she saw him in the hospital in Meridian.
She testified that she and her husband employed Dr. Claude L. Brown, a psychiatrist, to examine him. She had given Dr. Brown a history of the conduct of her son. Mrs. Tarrants did not express any opinion as to the sanity or insanity of her son.
Dr. Claude L. Brown, a qualified psychiatrist who resides in Mobile, Alabama, testified that he examined appellant in the jail at Meridian on two occasions. The first examination on October 23, 1968, extended over a period of an hour and a half. The second examination on October 30, 1968, was for a period of forty minutes. It was Dr. Brown's opinion from his examination that the appellant was insane and that he had been for several years.
In rebuttal George Butler, a deputy sheriff, testified that since appellant was arrested he had seen him on twenty to twenty-five occasions and had talked with him on two or three occasions. He said that he had not observed anything abnormal about appellant's actions and that from his conversation with him on general subjects, he noticed nothing abnormal. Based upon these observations it was his opinion that appellant was sane.
Dr. Reginald P. White, a psychiatrist, and director of the East Mississippi State Hospital, qualified as an expert in the field of psychiatry, testified in answer to a hypothetical question that in his opinion appellant in all probability could distinguish right from wrong and had the ability to comprehend the consequences of his act.
Appellant assigns as error twenty-eight grounds for reversal of this case, but these are combined in his brief into nine principal points, which we will discuss.
Appellant assigned as error the overruling of his motion for continuance so that an examination could be made relative to his sanity. This motion requested the court to appoint a competent medical doctor specializing in the field of psychiatry *364 to examine appellant in order that his mental competency, both at the time of the alleged offense and presently, could be determined. It specifically requested that Dr. Claude L. Brown, who was such a doctor, be appointed. Although the motion did not set up any grounds for the request, a hearing was had on the motion and Dr. Brown and others testified in support of the motion. Section 2575.5, Mississippi Code 1942 Annotated (Supp. 1968), provides as follows:
In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; provided, however, any cost or expense in connection with such mental examination shall be paid by the county in which such criminal action is pending.
This section makes no provision for the appointment of the psychiatrist selected by the defendant. King v. State, 210 So.2d 887 (Miss. 1968). The purpose of this statute is to avoid placing the defendant on trial unless he is at the time mentally capable of conducting a rational defense by intelligently conferring with his counsel. Frierson v. State, 250 Miss. 339, 165 So.2d 342 (1964). Dr. Brown testified on direct examination that based upon his examination of the appellant it was his opinion that appellant was insane and possessed only a partial ability to assist in his own defense. But on cross examination he testified that appellant was oriented as to time and place, knew where he was and why he was there. One of the attorneys for appellant testified in support of the motion, but as we read his testimony he did not specifically testify to any facts that would lead to the conclusion that the appellant was mentally incapable of assisting in his defense. In McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961), a petition under oath was filed by the attorneys representing McGinnis alleging that appellant was mentally incapable of advising and assisting counsel and conducting a rational defense, and requesting that he be sent to Mississippi State Hospital at Whitfield. A hearing was had on the petition and it was denied. McGinnis was convicted of manslaughter and he appealed. While the appeal was pending some of the interested parties had him committed to Whitfield. After he was examined by the staff, their unanimous opinion was that he was insane. Thereafter, counsel for appellant filed a petition for writ of error coram nobis in the trial court where it was denied. An appeal was prosecuted from this denial. The appeal on the merits and the petition for writ of error coram nobis were combined in this Court. There we had not only the testimony on the motion made in the trial court, but also the finding of the staff at the Mississippi State Hospital that the defendant was insane. We held that the trial court was in error in refusing to grant the petition for the examination. There we said: "This case is in a peculiar situation of subsequent events clearly showing that he was insane upon examination by the Staff at Whitfield, with the probability that such condition had also existed at the time of the trial." 241 Miss. at 893, 133 So.2d at 402. In the case before us we have the peculiar situation of having the evidence on the motion and the report of the staff at Mississippi State Hospital showing that appellant is sane, without psychosis and a high I.Q. Under these circumstances, we can state with confidence that the trial judge did not abuse his discretion in overruling appellant's motion. However, we deem it appropriate to again point out that where a reasonable probability is established that a defendant charged with a crime is not mentally capable of defending himself and such showing is not refuted by the state, a mental examination should be ordered.
*365 Appellant next assigns as error the action of the trial court in overruling his motion for a continuance and for a change of venue. We find no merit in this contention. The only evidence introduced by appellant in support of his motion was newspaper clippings showing that a large amount of publicity had been given to the event growing out of the charge against the appellant. It was stipulated that similar publicity had been given over the radio and television. Most of this publicity was during the month of July prior to the trial in the latter part of November. In opposition to this motion the state introduced six witnesses who testified that in their opinion appellant could get a fair and impartial trial in Lauderdale County. Included in this number was the sheriff and the circuit clerk. The other four witnesses were from different sections of the county or had large acquaintances over the entire county. There is no suggestion that there was any prejudicial publicity once the trial had commenced. While there was wide publicity relative to the events surrounding and growing out of what occurred after the crime charged was committed it did not reach the massive proportion as it did in the cases cited by appellant. The well-settled rule in this state is that the granting of a change of venue is largely within the discretion of the trial court and we will not reverse on appeal unless it appears the trial court abused its discretion. Thompson v. State, 231 Miss. 624, 97 So.2d 227 (1957); Patton v. State, 207 Miss. 120, 40 So.2d 592 (1949); Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944); Wexler v. State, 167 Miss. 464, 142 So. 501 (1932).
Appellant also urges that the trial court was in error in overruling his motion for a directed verdict at the conclusion of the state's case. He argues two propositions in support of this contention. First, he says that the placing of the bomb at or near a residence not shown to have been occupied and shown only to contain household wares is not a violation of Section 2143, Mississippi Code 1942 Annotated (1956). Appellant argues that Section 2143 was enacted in 1942 to combat wartime sabotage and amended in 1947 to aid in the prevention of strike violence. It is his conclusion that it was enacted to protect transportation, communications, and manufacturing facilities, not private residences. Section 2143 reads as follows:
It shall be unlawful for any person at any time to bomb or to plant or place any bomb or other explosive matter or thing in, upon or near any building, ship, vessel, boat, railroad station, railroad car or coach, bus station or depot, bus, truck, or other vehicle, gas and oil stations and pipe lines, radio station or radio equipment or other means of communication, warehouse or any electric plant or water plant, telephone exchange or any of the lines belonging thereto, wherein a person or persons are located, or being transported, or where there is being manufactured, stored, assembled or shipped or in the preparation of shipment any goods, wares, merchandise or anything of value, with the felonious intent to hurt or harm any person or property, and upon the conviction thereof shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term as the court, in its discretion, may determine.
It is clear that this statute makes it unlawful for any person to plant any bomb or other explosive matter or thing near any building where there is being stored any goods, wares, merchandise or anything of value with a felonious intent to harm any person or property. In Rogers v. State, 228 Miss. 873, 89 So.2d 860 (1956) the appellant made a similar argument as does the appellant here and we stated the rules of construction relative to a new statute and said:
In the light of the rules just stated, and the words of the statute itself, it is clear to us that the particular evil *366 sought to be curbed by the enactment of Section 2143, as amended, was violence to persons or property, and the classifying characteristics of that particular evil is the employment or use of bombs or other explosives in, upon or near any bus (or other objects and places designated in the statute) as the means and place to accomplish the evil. (228 Miss. at 880, 89 So.2d at 863).
Appellant next contends that the explosives which he placed did not have a fuse or other device connected and therefore did not constitute a bomb. As heretofore stated, evidence shows that the appellant placed a box containing twenty-nine sticks of dynamite, a cap, a clock and battery in the driveway of the Davidson residence. It is not necessary that a bomb have a fuse or detonating device. In Rogers v. State, supra, we stated:
Appellant seeks to limit the term "to bomb" to its military significance. There can be no doubt that the noun "bomb", as used in the statute, was intended to designate an infernal machine employing explosives contrived by criminals to accomplish bodily injury or destruction of property. The Encyclopedia Americana, Vol. 4; State v. Londe, 345 Mo. 185, 132 S.W.2d 501. The first time the word "bomb" appears in the statute, it is used as a verb, and it would be idle to contend that it meant something other than the use or employment of a bomb to accomplish injury or death to a person or persons or to destroy property. We hold, therefore, that the acts done by appellant are clearly within the words of the statute. (228 Miss. at 878, 89 So.2d at 862-863).
We are of the opinion that the jury in this case was justified in finding from the evidence that the contents of the box placed by appellant constituted a bomb. Furthermore the court properly refused the instructions requested by appellant in this regard and properly overruled his motion for a directed verdict.
Appellant contends that the bringing out on cross-examination of his witness his past criminal record, especially an offense falling within the scope of the National Juvenile Delinquency Act unconstitutionally penalized him for asserting a valid defense of not guilty by reason of insanity. It has long been the rule in this state that when the defense is insanity, general or partial, the door is thrown wide open for the admission of evidence of every act of the party's life relevant to the issue of insanity and is admissible in evidence. Smith v. State, 95 Miss. 786, 49 So. 945 (1909). The court under this rule should be liberal in allowing the introduction of evidence which tends to show the insanity or sanity of the accused. McGarrh v. State, 249 Miss. 247, 148 So.2d 494 (1963).
Appellant also contends that the trial court was in error in overruling his objection to the cross examination of Dr. Brown as to what appellant told him relative to the crime charged. The record reflects that on direct examination counsel for appellant asked Dr. Brown a question wherein the acts as testified to by the state's witnesses were outlined and he then asked the doctor to assume that the defendant committed these acts and to give his opinion as to whether the defendant was sane or insane when he committed those acts. Dr. Brown's answer was "I think he was insane when he did that." On cross examination counsel for the state then asked Dr. Brown whether defendant told him about that occurrence. The court overruled appellant's objection to the question and Dr. Brown stated that the appellant told him about going to the home and placing a bomb there. When appellant put Dr. Brown on the stand he waived the privileged communications statute and the state could ask him any question relative to the sanity or insanity issue. The question here is when a defendant's defense is insanity can the doctor be compelled to testify as to what the appellant told him about the facts relative to the crime *367 charged. Appellant argues that the only way a psychiatrist can properly examine a man and form an opinion as to his sanity or insanity is by procuring from his patient a history of his past acts, including what he knows about the crime with which he is charged. It is argued that if the doctor is compelled to testify to what his patient told him about the crime, it is in reality making a defendant testify against himself. This argument raises an interesting question, but in view of the fact that there is no dispute in this case that the appellant did place the bomb as charged, we are all of the opinion that if the admission of this testimony was error, it was harmless error. However, Justice Rodgers and Justice Brady are of the opinion that it was error, but that it was harmless error under the facts of this case.
Appellant also assigns as error the overruling of his objection to the hypothetical question propounded by the state to its expert witness, Dr. Reginald P. White, a psychiatrist. The question propounded covers about seven pages in the record and it would serve no useful purpose to set it out in this opinion. While the hypothetical question is not perfect by any means, we are of the opinion that the overruling of the objection to the question was not prejudicial error in view of the facts and circumstances of this case.
Appellant urges that Section 2143, supra, is unconstitutional because it allows the imposition of a penalty from one year in the penitentiary to death for the same substantial offense without any guidelines for controlling the degree of punishment. Appellant cites in support of this contention United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In this case the court struck down the death penalty portion of the Federal Kidnapping Statute because it imposed an impermissible burden upon accused's exercise of his Fifth Amendment right not to plead guilty, and his Sixth Amendment right to demand a jury trial, but the remainder of the statute was held valid since the death penalty provision was severable from it. Appellant apparently recognizes that even though we were to hold that the death penalty portion of Section 2143 was invalid, which we do not, it would not affect this case because the death penalty was not imposed. Under the circumstances of this case, where the appellant did not plead guilty and where the death penalty was not imposed, we do not deem it necessary to reach the question of the validity of the death penalty of Section 2143. Appellant's principal contention is stated thusly in his brief:
Even though the death penalty was not imposed in this case, a problem still remains. That is the absence of any guidelines in the statute to aid a sentencing Trial Court in fixing the penalty for a period ranging from one year to life imprisonment. The absence of such guidelines is a glaring denial of this, or any other Defendant's right, to equal protection under the law. Only caprice, whim, or conditions of local passion and prejudice would prevent one Defendant from receiving a sentence of one year in jail while another was ordered imprisoned for the rest of his life on identical facts. The massive injustice of such a possibility, inherent in the statute, renders it unconstitutional and requires reversal.
We find no merit in this contention, but it is interesting to note that the Federal Kidnapping Statute without the death penalty provides for imprisonment for a term of years or for life while Section 2143, without the death penalty provision, provides for imprisonment for any term the court in its discretion may determine. Thus the penalty imposed under Section 2143 without the death penalty provision and the Federal Kidnapping Statute, as it now stands, is practically the same.
We have examined the other errors assigned, including all instructions given and refused by the trial court, and we find no *368 reversible error. For this reason we are of the opinion that this case should be affirmed.
Appellant's motion for a new trial based on newly discovered evidence seeks to have this Court consider matters not in the record before us for review. We must decide a case on appeal to this Court solely upon the record made in the trial court. His motion is in the nature of a remedy supplemental to a writ of error coram nobis and is prematurely filed. The motion will be dismissed without prejudice to the right of appellant to file a petition in compliance with Section 1992.5, Mississippi Code 1942 Annotated (1956) and Mississippi Supreme Court Rule 38. Diddlemeyer v. State, April 20, 1970, Miss., 234 So.2d 292.
For the reasons stated, this case is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, JONES and BRADY, JJ., concur.
RODGERS, Justice (specially concurring).
I concur in the results reached in the foregoing opinion. However, I must point out that I think it is a serious mistake to permit the State's attorney to question a psychiatrist, who was introduced by the attorney for the defendant for the purpose of showing mental incapacity of the accused, as to whether or not the accused patient admitted his guilt of the crime for which he is being tried. There are many reasons why this sort of testimony is unfair. In the first place, an insane person will admit any number of fanciful suggestions. In the second place, where the defendant is being tried, not only to determine his sanity, but also his guilt, to admit the babbling of persons thought to be insane will chill and often prevent defense attorneys from offering psychiatric evidence to show insanity.