437 So.2d 444 (1983)
David CAYLOR
v.
STATE of Mississippi.
No. 54440.
Supreme Court of Mississippi.
September 14, 1983.
Vernon L. Witherspoon, Irving, Tex., for appellant.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, ROY NOBLE LEE and HAWKINS, JJ.
*445 ROY NOBLE LEE, Justice, for the court:
David Caylor filed an instrument designated as "Petitioner's Original Application for Writ of Habeas Corpus" in the Circuit Court of Jackson County, Mississippi, for the purpose of vacating his guilty plea to the offense of armed robbery on the first day of December, 1981. After a full evidentiary hearing, the lower court, Honorable Clinton E. Lockard, presiding, denied the relief prayed for and dismissed the petition. Caylor has appealed here. We affirm.
The appellant has assigned four errors in the trial below. They are interrelated and all may be considered together. Appellant contends under those assignments (1) that the lower court erred in failing to have a pretrial jury resolve the mental competency of appellant to stand trial; (2) the physicians evaluating appellant, his trial counsel and the lower court all used the unconstitutional M'Naghten rule to determine appellant's competency to stand trial and enter the guilty plea; (3) the question of appellant's mental competency was improperly determined and his guilty plea was involuntary; and (4) appellant's counsel under the totality of the circumstances was ineffective in his representation of the appellant.
Mississippi Code Annotated § 99-13-11 (1972), provides the following:
In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; provided, however, any cost or expense in connection with such mental examination shall be paid by the county in which such criminal action is pending. (Emphasis added)
The purpose of the above statute is to avoid placing an accused on trial unless he is capable of conducting a rational defense by intelligently conferring with his counsel. Tarrants v. State, 236 So.2d 360 (Miss. 1970); Frierson v. State, 250 Miss. 339, 165 So.2d 342 (1964); McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961).
In Emanuel v. State, 412 So.2d 1187 (Miss. 1982), this Court addressed the question as to whether the lower court erred in refusing to grant a jury hearing on the question of the defendant's mental competency to stand trial. The Court said:
The trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense, the trial should not proceed until the defendant's mental condition has been investigated and it appears that he is sufficiently rational to make a defense. [Citations omitted]. [412 So.2d at 1188].
In the case sub judice, appellant and his father had been drinking at King's Inn, Jackson County, Mississippi. They left the establishment and were approaching their automobile in the parking lot when appellant told his father that he was going back to get some cigarettes. Appellant went inside, robbed the place, and returned to his father's car without disclosing what he had done, and they drove away. The incident occurred on May 31, 1981, and, subsequently, they were arrested near Pascagoula for the crime. Both were indicted, and on December 1, 1981, appellant exonerated his father, entered a plea of guilty in the Circuit Court of Jackson County, Honorable Robert T. Mills, presiding, for armed robbery and was sentenced to seven (7) years in custody of the Mississippi Department of Corrections, without parole.
Prior to the guilty plea, appellant's trial attorney, after discussing instances of appellant's emotional instability (obtained from appellant's mother, Mrs. Caylor), filed a motion for psychiatric examination of appellant, which was granted. He was evaluated by a clinical psychologist with the *446 Singing River Mental Health and Retardation Services, Dr. John Stoudenmire, and a psychiatrist, Dr. William D. Bridges. Mrs. Caylor was not satisfied with their findings and evaluations, and employed another psychiatrist, Dr. Else Tracy, to evaluate her son. Appellant's attorney studied the evaluations and reports, conferred with appellant and his mother and advised that, in his opinion, a guilty plea would be in appellant's best interest. After thorough consideration and understanding of what the guilty plea involved, appellant entered the plea, and a complete record and transcript was made at the time it was accepted. On the hearing to vacate the guilty plea, that transcript and the evidence before the sentencing judge was presented to the court. Pertinent parts follow.
Trial attorney Sigalas testified:
A. After I ... after I advised his mother and David of what had happened, of what the doctors' reports were, then we determined that it would be of no use to have a competency hearing. In my opinion, the evidence against him was overwhelming. I had . .. I had no reasonable reason to believe that a competency hearing would have any results any different.
Q. Alright. So, it's your position that he had no right to a competency hearing.
A. No, I didn't say that.
* * * [After objection]
Q. Now, did David or his mother ever discuss with you the possibility of having a competency hearing?
A. No, I discussed it with them. I explained ... I explained primarily to David's mother ... is who I had most of the conversations with, and I asked her did she think that they would be in his best interest and she said, "I really don't know." She said, "You ought to discuss it with David." David told me he wanted to plead guilty and be done with it. I told him, I said, "At this hearing," I said, "what will be placed in issue is whether or not you are competent to stand trial." I had no reason for him ... after the doctors had evaluated him and read them reports, I had no reason to believe that David wasn't competent to discuss it with me. (Emphasis added)
Dr. John Stoudenmire, the psychologist who evaluated appellant, testified:
Q. Now, Doctor, did this defendant at any time exhibit any characteristic or any condition which would prevent him from correctly and from intelligently communicating with his lawyer?
A. No, sir.
Q. Did he at any time display any characteristic which would prevent him from relating the facts of the crime to his attorney and assisting in his defense in the courtroom?
A. No, sir.
Dr. William D. Bridges testified:
Q. Okay. Did you understand that you were to use the McNaughton [sic] Rule, as you have related to the Court, in examining David Caylor?
A. That's ... that is correct. That's basically what I was asked ... to examine the Defendant as to his mental capacity to know right from wrong, to determine the Defendant's ability to aid his counsel in the preparation of his defense.
The psychiatric evaluation of Dr. Else Tracy, while not answering directly the question that is involved in this case, indicated that there was no evidence of any psychotic disorder; that there was no evidence of hallucinations or delusions; that he was very capable of doing abstract thinking as judged by his response to proverbs as well as similarity; that there was no evidence through the interview of any bona fide depressive effect; that there was no anxiety manifest in the interview, other than a general air of mistrust; that his intellect was judged to be certainly average or somewhat above average; and that he was very capable of doing calculations rapidly in his head.
The sentencing judge placed the appellant under oath and conducted an exhaustive examination of him to determine whether or not he understood his guilty plea and knew what he was doing. At that *447 time, appellant testified that he understood the charge against him and the maximum sentence for the crime; that no one induced him to plead guilty; that his attorney had acted and advised him in his best interest; that he understood he had the right to a jury trial and to be confronted with witnesses against him; that he could call witnesses in his own behalf and could testify or not testify; that he knew and understood it would be the duty of the state to prove a case against him beyond reasonable doubt and that all twelve jurors must agree on a verdict of guilty; that he had a right, if tried and convicted, to appeal to the Mississippi Supreme Court; that he understood the State would recommend a sentence of seven years, without parole, if the plea of guilty was accepted; that he was pleading guilty for no other reason than that he robbed the King's Inn; that he understood the court was not bound by the State's recommendation and would not have to accept it; and that he understood all other questions asked him by the court.
The attorney for appellant's father was present during that examination of the appellant and the guilty plea. At the conclusion, he asked the court to permit appellant to explain his father's connection with the armed robbery and stated that the district attorney's office had agreed to nol-pros the charge, but, for the record, wanted an explanation from appellant as to what participation his father had in the robbery. Thereupon, appellant stated; "My father had no participation in the armed robbery whatsoever, he had no knowledge. We had been drinking and we had just come from the place where we were drinking and I told him I was going back in and get a pack of cigarettes. I went in and robbed the place, he didn't know about it or nothing."
The lower court on the petition hearing held that appellant knew right from wrong, that he was able to aid his counsel, that he had average or better intelligence; that he was without psychosis; that there was no reason at that point for the sentencing judge to hold, on his own initiative, any separate hearing; and that appellant's counsel was not ineffective. We agree.
The appellant takes the position on the questions involved here that the sentencing court used the incorrect standard in determining whether or not he was sane and competent to stand trial, or to enter the guilty plea on the armed robbery indictment. He argues that the M'Naghten rule was applied when the Dusky rule should have been applied.[1]
While appellant's trial attorney and some of the examining physicians used confusing terms in distinguishing between the M'Naghten rule and the Dusky rule, they all stated that appellant knew the difference between right and wrong and that he was rational and able to confer with his attorney concerning his defense of the case. Likewise, those conclusions stand for the fact that he was also rational and competent to enter the guilty plea. Even though a sign may be placed on a horse to the effect that the horse is a cow, the sign or name does not change him from being a horse.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Briefly, the M'Naghten rule is the difference between right and wrong test in the trial of a case on its merits. Myrick v. State, 290 So.2d 259 (Miss. 1974); Hixon v. State, 165 So.2d 436 (Fla.App. 1964). The Dusky rule presents the question of whether or not a defendant has the present competency to stand trial and whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).